1   MARC M. SELTZER (54534)
    mseltzer@susmangodfrey.com
2   SUSMAN GODFREY L.L.P.
    1901 Avenue of the Stars, Suite 950
3   Los Angeles, CA  90067-6029
    Telephone:  (310) 789-3100
4   Fax:  (310) 789-3150

5   THOMAS G. FOLEY, JR. (65812)
    tfoley@foleybezek.com
6   ROBERT A. CURTIS
    rcurtis@foleybezek.com
7   JUSTIN P. KARCZAG (223764)
    jkarczag@foleybezek.com
8   FOLEY BEZEK BEHLE & CURTIS LLP
    15 West Carrillo Street
9   Santa Barbara, CA  93101
    Telephone:  (805) 962-9495
10  Fax:  (805) 962-0722

11  JOHN A. STILLMAN (43731)
    jstillman@goodwildman.com
12  GOOD WILDMAN HEGNESS & WALLEY
    5000 Campus Drive
13  Newport Beach, CA  92660
    Telephone:  (949) 955-1100
14  Fax:  (949) 833-0633

15  Attorneys for Plaintiffs

16  (See Signature Page for Names and Addresses
    of Additional Counsel for Plaintiffs)

17              **UNITED STATES DISTRICT COURT**

18             **CENTRAL DISTRICT OF CALIFORNIA**

19

20  JEFFREY SCHULEIN and LINDA
    SCHULEIN, as Trustees of the Schulein          Case No. SACV11-1891 AG (ANx)
21  Family Trust established March 29, 1989
    and governed by agreement dated                **CLASS ACTION**
22  December 5, 2002; CHRISTOPHER J.
    RODENFELS, as Trustee of The
23  Christopher J. Rodenfels 2000 Revocable        **FIRST AMENDED COMPLAINT**
    Trust established May 10, 2000; ROBERT         **FOR VIOLATION OF THE**
24  H. BARR and JANE S. BARR, as Trustees          **FEDERAL SECURITIES LAWS**
    for the Robert H. and Jane Barr Trust dated    **AND BREACH OF FIDUCIARY**
25  February 1, 2003; CHRISTINE L. COX, as         **DUTY**
    Trustee for the Christine L. Cox Trust
26  dated December 15, 2003; CLAY A. COX,
    as Trustee for the Clay A. Cox Trust dated     **JURY TRIAL DEMANDED**
27  December 15, 2003; MATTHEW S.
    GOLDSMITH and KATHERINE M.
28  GOLDSMITH, as Trustees of the Matthew
    Shawn Goldsmith and Katherine Mary

    2392295v1/012711

1  Goldsmith Living Trust dated May 10,
2007; TIMOTHY McDONALD, an
2  Individual; WILLIAM J. McDONALD and
JUDITH A. McDONALD, as Trustees of
3  the William J. and Judith A. McDonald
Living Trust dated April 16, 1991; and
4  WILLIAM J. WIESELER, as Trustee for
the William J. Wieseler Trust dated
5  September 9, 2002; Individually, and on
Behalf of All Others Similarly Situated,
6
                  Plaintiffs,
7
            vs.
8
9  PETROLEUM DEVELOPMENT
CORPORATION and DP 2004 MERGER
SUB LLC,
10
                  Defendants.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2392295v1/012711                          2

## I.   NATURE OF THE ACTION

1.     This is a class action brought on behalf of all persons and entities who owned limited partnership units in one or more of twelve related limited partnerships (collectively, the "Partnerships") formed by defendant Petroleum Development Corporation (now doing business as PDC Energy) ("PDC") which were acquired by PDC by means of mergers effectuated by the use of virtually identical proxy statements issued to the limited partners.[1]  As alleged below, those proxy statements were materially false and misleading and omitted material facts relating to the value of the assets held by the Partnerships.  The mergers cashed out the limited partners at grossly unfair prices and thereby enriched PDC at the limited partners' expense.  By this action, plaintiffs seek damages, restitution and equitable relief for themselves and the members of the Class, as defined in paragraph 14 below.

2.     Defendant PDC is a domestic independent natural gas and crude oil company.  PDC owns, operates and manages natural gas and crude oil properties located predominantly in Colorado (the Denver-Julesburg (D-J) and Piceance Basins), Texas (the Permian Basin) and West Virginia (the Appalachian Basin). Over a period of several years, PDC formed numerous limited partnerships to raise funds to finance the acquisition and development of oil and gas properties, and attracted thousands of investors who paid hundreds of millions of dollars for their limited partnership interests.   After raising these funds from investors, which enabled PDC to acquire and develop these properties, PDC decided to acquire all of the partnerships' assets for itself and to do so at unfairly low prices.  To that end, PDC conceived and implemented a common scheme and plan to take all of the

---

[1] The Partnerships at issue were known as PDC 2002-D Limited Partnership, PDC 2003-A Limited Partnership, PDC 2003-B Limited Partnership, PDC 2003-C Limited Partnership, PDC 2003-D Limited Partnership, PDC 2004-A Limited Partnership, PDC 2004-B Limited Partnership, PDC 2004-C Limited Partnership, PDC 2004-D Limited Partnership, PDC 2005-A Limited Partnership, PDC 2005-B Limited Partnership, and Rockies Region Private Limited Partnership.

1    partnerships private by the end of 2012, by means of virtually identical proxy

2    statements accomplished through a single entity, its wholly-owned subsidiary,

3    defendant DP 2004 Merger Sub LLC (Merger Sub), and acquire all of the assets

4    and the interests of the limited partners through cash out merger transactions.

5        3.    The twelve Partnerships at issue in this action were formed by PDC to

6    obtain financing for oil and gas exploration and development in both the D-J and

7    Piceance Basins.   The interests the Partnerships owned in those oil and gas

8    properties are very valuable.   The D-J Basin includes the Wattenberg field.

9    According to PDC, the Wattenberg field, including the Niobrara formation, is

10   PDC's "chief growth driver" in the Rocky Mountain Region, and is one of PDC's

11   "most prized assets."  PDC has recently described the wells drilled in this field to

12   be "very economic."  The Piceance Basin fields are also deemed by PDC to be

13   among its important "core" assets.

14       4.    Other oil and gas companies are also exploiting the Wattenberg field.

15   On November 16, 2011, the Wall Street Journal reported that Anadarko Petroleum

16   Corp. announced that the minerals it controls in the Wattenberg field may hold

17   more than a billion barrels of recoverable oil and natural gas.  The Wall Street

18   Journal said the "disclosure could vault Colorado's Wattenberg field into the ranks

19   of major oil developments in the United States, joining the Bakken Shale in North

20   Dakota and the Eagle Ford in South Texas."   Anadarko said "it expects its

21   production from the region to grow at a compound annual rate of 20% between

22   2010 and 2012," and that its wells will ultimately yield between 500 million and

23   1.5 billion barrels of oil, natural gas liquids and natural gas.  The Wall Street

24   Journal noted that "Only a handful of billion-barrel fields have ever been found in

25   the U.S."

26       5.    Because the Partnerships' limited partnership units were registered

27   with the Securities Exchange Commission (SEC) pursuant to section 12 of the

28   Securities Exchange Act of 1934 (the "1934 Act"), PDC could accomplish this

1   acquisition only by soliciting the votes of the limited partnerships through proxy

2   statements that complied in every respect with section 14 of the 1934 Act and the

3   SEC Rules and Regulations promulgated thereunder.  The proxy statements were

4   thus an "essential link" in the accomplishment of the scheme.

5         6.   PDC accordingly prepared and issued proxy statements to the limited

6   partners.   Those proxy statements, which are virtually identical in content,

7   contained materially false and misleading statements and omitted to state material

8   facts relating to the value of the assets of the Partnerships and the units held by the

9   limited partners.  The proxy materials portrayed the value of the partnerships' units

10   to be, under most measures, less than what would be paid to limited partners upon

11   consummation of the mergers.

12         7.   By virtue of § 14(a) of the 1934 Act, full and fair disclosure of all

13   material facts is required with regard to any management-submitted proposals that

14   will be subject to a shareholder vote.  The making of material misstatements and

15   omissions in connection with the solicitation of proxies is prohibited.  Further, as

16   the sole managing general partner of each of the Partnerships, PDC had a fiduciary

17   obligation to deal fairly with the limited partners and to fully and fairly disclose to

18   them all material information known by PDC about the value of the Partnerships'

19   assets.   In spite of these fiduciary obligations, PDC failed to disclose material

20   information about the true value of the Partnerships' assets and took advantage of

21   the limited partners so that it could buy their interests at grossly unfair prices.

22   **II.   <u>JURISDICTION AND VENUE</u>**

23         8.   The claims asserted herein arise under section 14(a) of the 1934 Act,

24   15 U.S.C. § 78n(a), and Rule 14a-9, 17 C.F.R § 240.14a-9, promulgated thereunder

25   by the SEC and state law for breach of fiduciary duty. Jurisdiction is conferred by §

26   27 of the 1934 Act, and 28 U.S.C. §§ 1331, 1337 and 1367.

27         9.   Venue is proper in this district pursuant to § 27 of the 1934 Act and 28

28   U.S.C. § 1391(a)(2) because false statements were made to plaintiffs and other class

1   members who reside in this district and acts giving rise to the violations complained

2   of occurred in this district.

## III.   THE PARTIES

4       10.   Plaintiffs Jeffrey Schulein and Linda Schulein ("Schuleins"), as

5   Trustees of the Schulein Family Trust established March 29, 1989 and governed by

6   agreement dated December 5, 2002 ("Schulein Trust"), are residents of Orange

7   County, California.   The Schulein Trust was a limited partner in the PDC 2003-B

8   Limited Partnership, PDC 2005-B Limited Partnership, and Rockies Region Private

9   Limited Partnership.

10       11.   Plaintiff Christopher J. Rodenfels ("Rodenfels"), as Trustee of the

11   Christopher J. Rodenfels 2000 Revocable Trust established May 10, 2000

12   ("Rodenfels Trust"), is a resident of Signal Hill, California.   The Rodenfels Trust

13   was a limited partner in PDC 2004-D Limited Partnership, PDC 2005-A Limited

14   Partnership, PDC 2005-B Limited Partnership and Rockies Region Private Limited

15   Partnership.

16       12.   Plaintiffs William J. McDonald and Judith A. McDonald

17   ("McDonalds"), as Trustees of the William J. and Judith A. McDonald Living Trust

18   dated April 16, 1991 ("McDonald Trust"), are residents of Castro Valley,

19   California.   The McDonald Trust was a limited partner in PDC 2004-B Limited

20   Partnership, PDC 2004-C Limited Partnership, PDC 2005-A Limited Partnership,

21   and Rockies Region Private Limited Partnership.

22       13.   Plaintiff Timothy McDonald ("T. McDonald"), an individual, is a

23   resident of San Ramon, California.   T. McDonald was a limited partner in PDC

24   2003-B Limited Partnership, PDC 2003-C Limited Partnership, PDC 2003-D

25   Limited Partnership, and PDC 2004-A Limited Partnership.

26       14.   Plaintiffs Matthew S. Goldsmith and Katherine M. Goldsmith, as

27   Trustees of the Matthew Shawn Goldsmith and Katherine Mary Goldsmith Living

28   Trust dated May 10, 2007 ("Goldsmith Trust") are residents of San Ramon,

1    California.   The Goldsmith Trust was a limited partner in PDC 2003-B Limited
2    Partnership, PDC 2003-C Limited Partnership, PDC 2003-D Limited Partnership,
3    and PDC 2004-A Limited Partnership.

4        15.   Plaintiff Clay A. Cox ("Mr. Cox"), as Trustee for the Clay A. Cox
5    Trust dated December 15, 2003 ("Mr. Cox Trust"), is a resident of Omaha,
6    Nebraska.   The Mr. Cox Trust was a limited partner in PDC 2004-D Limited
7    Partnership, PDC 2005-B Limited Partnership, PDC 2004–A Limited Partnership,
8    and PDC 2004-B Limited Partnership.

9        16.   Plaintiff Christine L. Cox ("Ms. Cox"), as Trustee for the Christine L.
10   Cox Trust dated December 15, 2003 ("Ms. Cox Trust"), is a resident of Omaha,
11   Nebraska.   The Ms. Cox Trust was a limited partner in PDC 2004-D Limited
12   Partnership, PDC 2005-B Limited Partnership, PDC 2004–A Limited Partnership,
13   and PDC 2004-B Limited Partnership.

14       17.   Plaintiffs Robert H. Barr and Jane S. Barr ("Barrs"), as Trustees for the
15   Robert H. and Jane Barr Trust dated February 1, 2003 ("Barr Trust"), are residents
16   of Tucson, Arizona.   The Barr Trust was a limited partner in the PDC 2003-A
17   Limited Partnership, PDC 2003-B Limited Partnership, PDC 2003-C Limited
18   partnership, PDC 2004-B Limited Partnership, and PDC 2005-B Limited
19   Partnership.

20       18.   Plaintiff William J. Wieseler ("Wieseler"), as Trustee for the William
21   J. Wieseler Trust dated September 9, 2002 ("Wieseler Trust"), is a resident of
22   Omaha, Nebraska.   The Wieseler Trust was a limited partner in the PDC 2002-D
23   Limited Partnership, PDC 2004-A Limited Partnership, and 2005-A Limited
24   Partnership.

25       19.   Defendant PDC is a corporation organized under the laws of the State
26   of Nevada, with its principal executive offices located at 1775 Sherman Street,
27   Suite 3000, Denver, Colorado 80203.   PDC is an independent natural gas and crude

28

1   oil company engaged in the exploration for and the acquisition, development,

2   production and marketing of natural gas, natural gas liquids and crude oil.

3       20.    Defendant Merger Sub is a direct, wholly-owned subsidiary of PDC

4   and was organized as a limited liability company under the laws of the State of

5   Delaware.  Merger Sub was formed on May 7, 2010, solely for the purpose of

6   effecting the buyout of the class members' interests in the Partnerships.  The

7   principal executive offices of Merger Sub are located at 1775 Sherman Street, Suite

8   3000, Denver, Colorado 80203.

9   **IV.**   **CLASS ACTION ALLEGATIONS**

10      21.    Plaintiffs bring this action on their own behalf, and on behalf of a class

11  pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The Class is defined

12  as:

13          All persons and entities who owned partnership units in one or more of

14          the limited partnerships PDC 2002-D Limited Partnership, PDC 2003-

15          A Limited Partnership, PDC 2003-B Limited Partnership, PDC 2003-

16          C Limited Partnership, PDC 2003-D Limited Partnership, PDC 2004-

17          A Limited Partnership, PDC 2004-B Limited Partnership, PDC 2004-

18          C Limited Partnership, PDC 2004-D Limited Partnership, PDC 2005-

19          A Limited Partnership, PDC 2005-B Limited Partnership, and Rockies

20          Region Private Limited Partnership that were acquired by DP 2004

21          Merger Sub LLC.  Excluded from the Class are defendants and their

22          directors, officers, employees and agents.

23      22.    The members of the Class are so numerous that joinder of all members

24  is impracticable.  There were over 10,000 limited partners at the time of the

25  mergers at issue in this action.  While the exact number of Class members is

26  unknown to plaintiffs at this time and can only be ascertained through appropriate

27  discovery, plaintiffs believe that there are several thousand members of the Class.

28  Absent members of the Class may be identified from records maintained by

1   defendants and may be notified of the pendency of this action by mail, using a form
2   of notice similar to that customarily used in securities class actions.

3        23.    Plaintiffs' claims are typical of the claims of the members of the Class,
4   as all members of the Class were similarly affected by defendants' wrongful
5   common course of conduct complained of herein.

6        24.    Plaintiffs will fairly and adequately protect the interests of the
7   members of the Class and have retained counsel competent and experienced in class
8   and securities litigation.

9        25.    Common questions of law and fact exist as to all members of the Class
10   and predominate over any questions solely affecting individual members of the
11   Class. Among the questions of law and fact common to the Class are:

12        (a)    whether defendants violated the federal securities laws;

13        (b)    whether the fair value of the Partnerships' oil reserves was
14   understated in the proxy statements;

15        (c)    whether the proxy statements misrepresented or omitted material
16   facts about the values of the oil and natural gas reserves in
17   which the Partnerships owned an interest;

18        (d)    whether defendants breached their fiduciary duties of good faith
19   and fair dealing, including their fiduciary duty of candor, to the
20   members of the Class; and

21        (e)    the extent to which the members of the Class have sustained
22   damages and the proper measure of damages.

23        26.    A class action is superior to all other available methods for the fair and
24   efficient adjudication of this controversy, since joinder of all members is
25   impracticable. The damages suffered by individual Class members may be
26   relatively small, the expense and burden of individual litigation makes it virtually
27   impossible as a practical matter for members of the Class to redress individually the
28

2392295v1/012711                                           9

1     wrongs done to them. There will be no difficulty in the management of this action

2     as a class action.

3     **V.**     **DEFENDANTS' WRONGFUL COURSE OF CONDUCT**

4         27.     In 2002, PDC issued a prospectus outlining its plan to form the 2002

5     and 2003 Partnerships. On January 6, 2004, PDC issued a prospectus as part of its

6     "PDC 2004-2006 Drilling Program." Under this program up to twelve limited

7     partnerships would be formed by PDC, as the managing general partner, which

8     PDC would use to obtain financing from investors to drill, own and operate natural

9     gas and oil wells in Colorado, Michigan, North Dakota, Alabama, West Virginia,

10     Pennsylvania, Utah and other states.

11         28.     Between June 3, 2002 and December 6, 2005, PDC formed the twelve

12     Partnerships at issue in this action. During that period, over 10,000 persons and

13     entities collectively invested over $294 million for their limited partnership units in

14     the following Partnerships:

15           PDC 2002-D Limited Partnership, formed on June 3, 2002;

16           PDC 2003-A Limited Partnership, formed on June 3, 2002;

17           PDC 2003-B Limited Partnership, formed on June 13, 2003;

18           PDC 2003-C Limited Partnership, formed on September 26, 2003;

19           PDC 2003-D Limited Partnership, formed on September 25, 2003;

20           PDC 2004-A Limited Partnership, formed on April 9, 2004;

21           PDC 2004-B Limited Partnership, 2004-C Limited Partnership and

22     2004-D Limited Partnership, formed on July 28, 2004;

23           PDC 2005-A Limited Partnership, formed on November 30, 2004;

24           PDC 2005-B Limited Partnership, formed on February 8, 2005; and

25           Rockies Region Private Limited Partnership, formed on December 6,

26     2005.

27

28

29.   PDC served as the sole managing general partner of each of the Partnerships and exercised full and exclusive control over all of the activities of each of the Partnerships.

30.   Subsequently, PDC acquired the rights to explore and develop various oil and gas fields and transferred those rights to the Partnerships, as it represented it would do in the prospectuses for each of the Partnerships.   By creating these Partnerships, and attracting investors to become limited partners, PDC was able to raise sufficient capital to conduct exploration and drilling operations in these fields. The Partnerships utilized the contributed capital to acquire and develop leaseholds in the Wattenberg field and other areas of Colorado.   Those mineral rights included the right to drill wells to extract oil and gas from the Niobrara formation and other oil and gas producing zones contained within the Wattenberg field and the Piceance field.

31.   Each of the Partnerships acquired interests in, *inter alia*, leaseholds, oil and gas reserves, accounts receivables, infrastructure to extract and transport oil and gas, oil stored in tanks which had not yet been sold, and cash.

32.   The limited partners received cash distributions based on the production from the leaseholds and interests owned by each Partnership.   PDC represented to the limited partners that they would receive these distributions so long as revenue from the wells exceeded the expenses incurred during drilling. PDC also represented that most successful wells continue to produce for twenty years or more.   Section 3.02, subsection (a) of each of the partnership agreements stipulated that, as the managing partner, PDC retained 20% (30% in the case of Rockies Region Private Limited Partnership) of the profits earned from the sale of natural gas and oil produced from each Partnership's wells.

33.   Because of PDC's full and exclusive control over the activities of each Partnership, the partnership agreements established that PDC, as the sole managing general partner, owed a fiduciary responsibility to each Partnership and the limited

1   partners.  Subsection (n) of section 5.02 (in the case of the PDC 2004-A, PDC
2   2004-B, PDC 2004-C, and PDC 2004-D Limited Partnerships, subsection (o) of
3   section 5.02) of each of the partnership agreements, entitled "Conduct of
4   Operations," states:

5        The Managing General Partner shall have a fiduciary responsibility for
6        the safekeeping and use of all funds and assets of the Partnership,
7        whether or not in the Managing General Partner's possession or
8        control, and shall not employ or permit another to employ such funds
9        or assets in any manner except for the exclusive benefit of the
10       Partnership.

11       34.    Subsection (b) of Section 5.02 (in the case of the PDC 2004-A, PDC
12  2004-B, PDC 2004-C, and PDC 2004-D Limited Partnerships, subsection (c) of
13  Section 5.02) of each of the partnership agreements states:

14       All transactions between the Partnership and the Managing General
15       Partner or its Affiliates shall be on terms no less favorable than those
16       terms which could be obtained between the Partnership and
17       independent third parties dealing at arm's-length, subject to the
18       provisions of Section 5.07 hereof.

19       35.    Section 5.07, subsection (k) of each of the partnership agreements,
20  prohibits PDC, as the managing general partner, along with any of its affiliates,
21  from purchasing or acquiring any property from the Partnerships, directly or
22  indirectly, unless such a purchase or acquisition is pursuant to a transaction that is
23  fair and reasonable to the limited partners, subject to the following conditions:

24       A sale, transfer or conveyance, including a farmout, of an undeveloped
25       property from the Partnership to the Managing General Partner or an
26       Affiliate, other than an affiliated program, must be made at the higher
27       of cost or fair market value.

28

36.   Section 7.08, subsection (d) of each of the partnership agreements, provided that the agreement could be amended by a majority of the limited partners entitled to vote based on their ownership of then outstanding partnership units.

37.   Each Partnership possessed the right to further develop its assets. Such development included the right of the Partnerships to utilize hydro-fracturing to further develop its existing wells to increase the amount of oil and gas that could be extracted.   The Partnerships also possessed the right to develop new, vertical "infill" wells based on a change in local regulations that allowed additional wells to be drilled in the Wattenberg field.   The Partnerships also possessed the right to develop horizontal wells in the Niobrara formation in the Wattenberg field.   PDC knew at the time the proxies in question were solicited that infill wells and horizontal wells would substantially increase the volume of oil and gas that each Partnership could produce.

38.   In October 2010, PDC issued proxy statements to the limited partners in the 2004 Partnerships (PDC 2004-A Limited Partnership; PDC 2004-B Limited Partnership; PDC 2004-C Limited Partnership; and PDC 2004-D Limited Partnership).   In those proxy statements, PDC stated that it had decided to buy out the limited partners because its corporate strategy had "changed" since it initially formed the Partnerships.   PDC said:

> Drilling partnerships are not part of PDC's strategic plan going forward, and PDC wishes to buy them back, to the extent feasible. PDC has not established a drilling partnership since 2007 and has publicly announced a fundamental shift in its business strategy away from the partnership model to a more traditional exploration and production company model.   In 2008, PDC eliminated from its strategic plan the use of sponsored drilling partnerships as a method of raising capital to fund development of PDC's undeveloped properties due to availability of internally generated cash flow from operations

and external borrowing capacity under its line of credit. PDC currently believes these other sources of financing are sufficient to meet its futures capital needs under its strategic plan. Due to the limited availability of properties and third-party drilling and completion services, PDC believes that this method of financing allows PDC to obtain 100% of the working interest in wells developed, while achieving a higher growth rate for both production and reserves and a better economic return to its shareholders. PDC anticipates that the merger will provide PDC with an immediate increase in its share of the partnership's production and proved reserves since PDC will obtain from the investors the equity of the partnership not currently owned by PDC. PDC also wishes to position itself as a growth company. The merger will provide PDC with growth in both production and reserves from assets with which it is very familiar, and will permit PDC to invest further capital in those assets on a timetable of its own choosing.

39.    In February 2011, PDC issued nearly identical proxy statements to the 2005 Partnerships (PDC 2005-A Limited Partnership; PDC 2005-B Limited Partnership; and Rockies Region Private). These statements contained similar statements concerning the change in PDC's corporate strategy away from the limited partnership drilling programs toward "a more traditional exploration and production company model."

40.    In September 2011, PDC issued nearly identical proxy statements to the PDC 2002-D Limited Partnership and the 2003 Partnerships (PDC 2003-A Limited Partnership, PDC 2003-B Limited Partnership, PDC 2003-C Limited Partnership and PDC 2003-D Limited Partnership). These statements contained similar statements concerning a change in PDC's corporate strategy away from the

1    limited partnerships drilling programs and toward "a more traditional exploration

2    and production company model."

3        41.    Each of the proxy statements issued to the limited partners in October

4    2010, February 2011 and September 2011 included a virtually identical proposed

5    merger agreement whereby, upon approval by the limited partners, Merger Sub

6    would merge with each Partnership. Upon completion of the merger, the separate

7    existence of the Partnerships would cease and Merger Sub would survive as each

8    Partnerships' successor-in-interest.

9        42.    Each of the proxy statements urged the limited partners to vote in

10    favor of the proposed merger and in favor of an amendment to the partnership

11    agreement that would allow a simple majority of the limited partners to be

12    sufficient to approve a merger and eliminate the right of any dissenting limited

13    partner to maintain a continuing interest in the surviving entity of such a merger.

14    PDC urged the limited partners to approve the merger by including a section in

15    each of the proxy statements titled "The Partnership's Reasons for the Merger,"

16    which stated that declining natural gas prices along with the prospect of prolonged

17    reductions in cash distributions to all of the limited partners offered compelling

18    reasons for the limited partners to agree to the proposed mergers.

19        43.    At the time the proxy statements were issued to the limited partners,

20    PDC had been holding back a certain percentage of the cash distributions owed to

21    the limited partners under each of the partnership agreements. PDC was

22    withholding these funds so it could build a cash reserve for drilling operations that

23    PDC did not plan to conduct on behalf of the Partnerships. This hold back

24    artificially depressed distributions to the limited partners. PDC claimed in each of

25    the proxy statements that the revenue from the Partnerships' assets would not be

26    able to support the future development of the Partnerships' assets. As a

27    consequence, PDC asserted that the cash distributions owed to the limited partners

28    would continue to be reduced in order to fund the development of each

1   Partnership's assets.  PDC also claimed that it was likely that it would have to

2   continue to withhold these distributions from the limited partners at varying levels

3   up to 100%, and that this could go on for as many as five more years.

4            44.   PDC acknowledged in each of the proxy statements that both PDC and

5   its Board of Directors had a conflict of interest with the limited partners in

6   connection with the proposed mergers because they owed conflicting fiduciary

7   duties to PDC's shareholders and the limited partners in setting the price to be paid

8   to the limited partners and in structuring the mergers.  Because of this conflict, PDC

9   appointed a "special committee" of four non-employee members of its Board of

10   Directors.  This committee commissioned a "fairness opinion" and hired an

11   investment banker, Houlihan Lokey, to prepare a written "fairness opinion" that

12   would be disseminated to the limited partners with the proxy statements.  Each of

13   the proxy statements include Houlihan Lokey "fairness opinion" which states that

14   the consideration to be received by the limited partners in the proposed merger was

15   "fair to such unaffiliated holders of limited partnership interests from a financial

16   point of view."  The "fairness opinion" prepared by Houlihan Lokey states that it

17   reviewed "certain oil and gas reserve reports prepared by the Managing General

18   Partner's independent oil and gas reserve engineers (the "Reserve Reports")

19   containing estimates with respect to the Limited Partnership's oil and gas reserves."

20   Houlihan Lokey goes on to state that "we have not been requested to make, and

21   have not made, any physical inspection or independent appraisal of evaluation of

22   any of the assets, properties, or liabilities of the limited partnership or any other

23   party, nor were we provided with any such appraisals or evaluation, other than the

24   Reserve Reports."

25            45.   In a section titled "Recommendation Regarding the Proposed Merger

26   Transaction," each proxy statement stated that the special committee "encourages

27   [the limited partner] to vote FOR the proposals to approve the amendment and the

28   merger agreement."

46.    The partnership agreements allowed for the merger of the drilling partnership with another entity if a majority of the limited partners voted to approve the merger.    The partnership agreements further provided that in the event that a merger were approved, any limited partner who voted against the merger was required to be offered a choice between maintaining a continuing ownership interest in the surviving entity or receiving cash in an amount equal to the limited partner's pro rata share of the appraised value of the partnership's net assets.    The first step in the going private process was to obtain a vote from the partners eliminating the right to obtain a continuing interest in the surviving entity.    The second was to approve the cash out merger transaction.    Both steps were accomplished at the same time by means of the same proxy statement for each Partnership.

47.    Under applicable SEC regulations and industry practice, two main categories of oil and gas reserves are recognized, namely, proved and unproved. Unproved reserves are further subclassified as probable and possible.    Proved reserves, in turn, are subclassified as developed or undeveloped.    The estimated value of proved reserves, as defined by the SEC's rules, is required to be disclosed in financial statements filed with the SEC.

48.    In January 2009, the SEC revised its oil and gas reporting requirements, effective January 1, 2010.    *See* "Modernization of Oil and Gas Reporting," 74 Fed. Reg. 9 (Jan. 14, 2009).    A major change in the revised disclosure rules related to the treatment of probable and possible reserve valuations. Where the previous version of the SEC's rules had allowed oil and gas companies to disclose proved reserves only, the revised rules allow companies to disclose both probable and possible reserves.    *Id.* at 2172.    The SEC noted that "numerous oil and gas companies already disclose unproved reserves on their Web sites and in press releases," and that this practice "does not appear to have caused confusion in the market."    *Id.* at 2173.    In its own financial statements filed with the SEC and other

17

1   public statements, PDC has disclosed information regarding both its proved and

2   unproved reserves.

3        49.    In addition to changing the treatment of unproved reserves, the revised

4   SEC rules feature new definitions applicable to proved reserves.  Under the revised

5   rules, the focus is on the "final product" of "oil and gas production activities," not

6   on the particulars of the oil extraction technology used.  74 Fed. Reg. 9 at 2163.

7   Further, the revised rules include in their definition of proved undeveloped reserves

8   those reserves that are found in "drilling units" immediately adjacent to units

9   containing producing wells as well as drilling units beyond immediately adjacent

10   drilling units.  74 Fed. Reg. 9 at 2165.[2]

11        50.    The proxy statements for each of the twelve partnerships set forth

12   valuations for both proved and unproved reserves.  For the proved reserves, PDC

13   based its estimate of value on a future production curve consistent with a report

14   from Ryder Scott Company, L.P. (Ryder Scott) a petroleum engineering consulting

15   firm that valued the reserves as of December 31, 2009, but used more current

16   pricing and higher future net income discount rates.  At the instruction of PDC,

17   Ryder Scott's report did not include any estimate of the value of any unproved

18   reserves. Instead, in the proxy statements for each of the Partnerships, PDC valued

19   all of the Partnerships' unproved reserves at $10,000 per drilling location, with no

20   disclosure as to how it arrived at that valuation.  The $10,000 per drilling location

21   value it attributed to unproved reserves only takes into account infill wells, not

22   horizontal wells.  Indeed, no value whatsoever was assigned by PDC in the proxy

23   statements to any horizontal wells.

24        51.    These reserve valuations failed to take into account technological

25   developments that PDC itself has publicly touted as likely to give rise to

26   substantially increased revenues:   infill drilling and enhanced recovery from

27   [2] "A drilling unit refers to the spacing between wells required by some local

28   jurisdictions to prevent wasting resources and optimize recovery." *Id.* at n.104.

1    horizontal drilling. Since 2009, "infill wells" can be drilled in the same producing
2    formations as a result of a change in Colorado state regulatory requirements that
3    allows wells to be drilled on twenty acre spacing. In addition to "infill wells," PDC
4    also planned to drill horizontal wells into producing formations already developed
5    by the drilling partnerships' vertical wells. PDC has already begun to drill infill
6    wells and horizontal wells and plans to drill more. PDC reported earlier this year
7    that PDC drilled and completed its first horizontal Niobrara well in the fourth
8    quarter of 2010. PDC recently trumpeted its success with this well. PDC reported
9    that the well tested a 24-hour peak rate of 625 barrels of oil equivalent per day.
10    PDC also reported it has budgeted a 14-well horizontal Niobrara drilling program
11    for 2011.

12       52.    However, if infill wells and horizontal drilling are taken into account,
13    the net present value of the net income to be derived from the partnership's reserves
14    would greatly exceed the amount the limited partners received when they were
15    cashed out. Taking one of the partnerships, PDC 2004-D, as an exemplar, the
16    limited partners were paid approximately $13.2 million for their limited partnership
17    units. That partnership had 44 vertical wells at the start of 2010. If 32 infill wells
18    and eight Niobrara horizontal wells were included in the estimated value of the
19    assets held by PDC 2004-D, the value of the reserves would be more than $100
20    million, using the SEC's 10% present value discount rate.[3]

21       53.    The estimated discounted future net income from the infill wells alone
22    (which are estimated to be worth approximately $40 million) should have been
23    disclosed in the proxy statements. Regardless of whether they were properly

24

25    [3] In estimating the value of the proven reserves in the proxy statements, PDC used a
26    15% net present value discount rate for proved developed reserves and 25% for
proved undeveloped reserves, which had the effect of lowering the estimated values
of those reserves. Ryder Scott's report of summarized in the proxy statements used
27    a 10% discount rate. Ryder Scott's report for PDC 2004-D showed an estimated
value of $8,090,000 for the partnership's proved reserves. As alleged above, Ryder
28    Scott was instructed by PDC not to estimate the value of any unproved reserves.

1    characterized as proved or unproved reserves, the estimated value of the reserves

2    accessible by infill wells and by horizontal drilling using assumptions about

3    production, commodity prices and costs that are similar to those that were used to

4    value the proved reserves were known to PDC and should have been disclosed in

5    the proxy statements, and the failure to disclose those values rendered the proxy

6    statements materially false and misleading.

7    54.    Before it solicited the limited partners to vote for the mergers, PDC

8    began reducing monthly distributions to the limited partners.  PDC's stated reason

9    for reducing the distributions was to create a cash reserve to enable each of the

10   Partnerships to further develop its oil and gas reserves.  PDC also took the position

11   that unless it acquired sole ownership of the Partnerships' assets, the Partnerships

12   would have insufficient access to capital, by borrowing or otherwise, to fully

13   develop the properties the Partnerships owned.  This reduction in distributions was

14   designed to make continued ownership appear unattractive to the limited partners.

15   Furthermore, and contrary to what was represented in the proxy statements, the

16   Partnerships could, in fact, have borrowed or raised funds to enable further

17   exploitation of the interests owned by the Partnerships.  Indeed, cash flow analyses

18   in the hands of PDC, but not disclosed to the limited partners, showed that the

19   Partnerships could self-finance the development of their ownership interests in

20   those reserves.  The mergers were approved by a majority of the limited partners of

21   the respective Partnerships at meetings held on December 8, 2010, June 15, 2011,

22   and October 27, 2011.  As a result of PDC's false and misleading statements and

23   omissions of material facts in the proxy statements, PDC was able to obtain

24   ownership of all of the Partnerships' valuable assets by paying grossly unfair prices

25   for the class members' limited partnership units.

26   55.    The Ryder Scott report, which was summarized in a letter included

27   with each of the proxy statements, states: "At PDC's request, this report addresses

28   only the proved reserves attributable to the properties evaluated herein."  Thus,

Ryder Scott was instructed by PDC to only value each Partnership's "proven" reserves, and the Ryder Scott reports that PDC included in the proxy statements did not account for the value of the Partnerships' interests in the Niobrara formation and their ability to drill infill wells and the increased anticipated cash flow from refracturing each Partnership's existing vertical wells.

56.    In Section 2.2 of each merger agreement, PDC offered to purchase the partnership units of the respective limited partners for an amount it determined to be fair.  The prices PDC unilaterally determined to pay for each limited partnership unit was set as follows:

PDC 2002-D Limited Partnership: $4,024;

PDC 2003-A Limited Partnership: $8,125;

PDC 2003-B Limited Partnership: $7,864;

PDC 2003-C Limited Partnership: $5,603;

PDC 2003-D Limited Partnership: $5,795;

PDC 2004-A Limited Partnership: $8,400,

PDC 2004-B Limited Partnership: $8,250,

PDC 2004-C Limited Partnership: $5,650,

PDC 2004-D Limited Partnership: $7,544,

PDC 2005-A Limited Partnership: $7,000,

PDC 2005-B Limited Partnership: $5,506, and

Rockies Region Private Limited Partnership: $6,603

57.    On December 8, 2010 the limited partners of the 2004 Partnerships (PDC 2004-A Limited Partnership; PDC 2004-B Limited Partnership; PDC 2004-C Limited Partnership; and PDC 2004-D Limited Partnership) voted and a majority approved the proposed amendment and the merger.

58.    On March 25, 2011 the limited partners of the 2005 Partnerships (PDC 2005-A Limited Partnership; PDC 2005-B Limited Partnership; and Rockies

1    Region Private Limited Partnership) voted and, again, a majority approved the

2    proposed amendment and merger.

3         59.    On October 28, 2011 the limited partners of the PDC 2002-D Limited

4    Partnership and the 2003 Partnerships (PDC 2003-A Limited Partnership; PDC

5    2003-B Limited Partnership; PDC 2003-C Limited Partnership; and PDC 2003-D

6    Limited Partnership) voted and, yet again, a majority approved the proposed

7    amendment and merger.

8         60.    The total amount paid by PDC for the partnership units was

9    approximately $102,000,000. This sum amounts to less than 34 cents on the dollar

10   of the amount invested by the limited partners in the Partnerships, and is far less

11   than the true value of the Partnerships' assets.

12        61.    As alleged herein, new drilling techniques, including horizontal

13   drilling and hydraulic fracturing (known as "fracking"), made it possible for the

14   Partnerships' operations to extract oil and gas that could not have previously been

15   extracted economically utilizing traditional vertical wells. Horizontal drilling is a

16   technique whereby instead of simply drilling straight down into a reserve, the drill

17   equipment and process can be modified to drill into the same reserve on a

18   horizontal plane, thus increasing and opening up greater access to the oil and gas.

19   Hydraulic fracturing is another more recently employed drilling technology in

20   which water is mixed with sand and chemicals to generate extremely high pressures

21   within certain rock formations resulting in fractures that create access to oil and gas

22   that was previously economically not recoverable by conventional drilling.

23        62.    As a consequence of the mergers, the limited partners were excluded

24   from obtaining the benefits obtainable by exploiting the newer and more profitable

25   drilling methods, and instead, only the general partner, PDC, will realize these

26   benefits.

27        63.    Prior to the vote on the amendments and mergers, PDC failed to

28   disclose the value to the Partnerships' assets attributable to the new drilling

2392295v1/012711                                22

1  technologies described above despite its obligation to do so.  In fact, PDC's offer to

2  purchase the Partnership units did not value the opportunity to develop the

3  Partnerships' reserves in any meaningful way.  Instead, PDC assigned no value to

4  the horizontal wells and an arbitrary value of $10,000 per drilling location for the

5  infill wells, and failed to disclose its own high valuation of these assets.

6      64.    As alleged above, a recent change in Colorado regulations, which

7  allowed twice as many wells to be drilled on the same amount of land within the

8  Wattenberg field, greatly enhanced the value of the Partnerships' reserves.  This

9  was significant and material because the number of wells that can be drilled has a

10  direct positive correlation with the value of reserves.    Previously, regulations

11  mandated that there could not be more than one drilling site for every 40 acres in

12  the Wattenberg field.  The new regulations allowed a 100% increase in that number.

13      65.    PDC had in its possession material information that showed that the

14  Partnerships' interests in the Wattenberg field, including the ability to develop

15  horizontal wells in the Niobrara formation and to develop infill wells, were

16  extremely valuable and worth substantially more than $10,000 per drilling location,

17  given the changes in local regulation and the new drilling techniques alleged above.

18

19                    **FIRST CLAIM FOR RELIEF**

20              **(Against Defendants for Violations of § 14(a) of the**

21              **Securities Exchange Act of 1934 and SEC Rule 14a-9)**

22      66.    Plaintiffs incorporate each and every allegation set forth above as if

23  fully set forth herein.

24      67.    PDC caused the proxy statements to be issued to the limited partners to

25  approve the respective Partnership amendments and merger agreements.

26      68.    Rule 14a-9, promulgated pursuant to §14(a) of the 1934 Act, provides

27  that no proxy statement shall contain "any statement which, at the time and in the

28  light of the circumstances under which it was made, is false or misleading with

1    respect to any material fact, or which omits to state any material fact necessary in

2    order to make the statements therein no false or misleading."

3          69.    The proxy statements at issue in this action were issued in violation of

4    §14(a) of the 1934 Act and Rule 14a-9 because those proxy statement misstated and

5    omitted material facts relating to the fair value of the Partnerships' assets.

6          70.    In the exercise of reasonable care, defendants should have known that

7    PDC's proxy statements were materially false and misleading.  Plaintiffs, while

8    reserving all of their rights, expressly disclaim and disavow at this time any

9    allegation in this complaint that could be construed as alleging fraud.

10         71.    By reason of the mergers accomplished by means of the proxy

11   statements, plaintiffs and the members of the Class were injured.

12

13                        **SECOND CLAIM FOR RELIEF**

14              **(Against Defendants for Breach of Fiduciary Duty)**

15         72.    Plaintiffs incorporate each and every allegation set forth above as if

16   fully set forth herein.

17         73.    Defendant PDC, as the sole general partner of each of the Partnerships,

18   owed fiduciary duties to all of the limited partners in each such Partnership.  In

19   addition, PDC was in possession of material non-public information concerning the

20   true value of the Partnerships' assets, business and future prospects.  Thus, there

21   existed an imbalance and disparity of knowledge and economic power between

22   PDC and the limited partners.

23         74.    Defendant PDC breached its fiduciary duties owed to the limited

24   partners of the Partnerships by, among other things, failing to disclose to the limited

25   partners the true value of the Partnerships' assets and providing false or misleading

26   information in the proxy statements regarding the value of those assets.  Among

27   other things, defendants:

28

2392295v1/012711                              24

(a)     Failed to disclose that PDC planned to refracture each partnership's existing vertical wells, which was projected by Ryder Scott to generate sufficient additional cash flows for each Partnership that would have permitted each Partnership to both develop horizontal wells in the Niobrara formation and infill wells on the Partnership's leaseholds and continue to make distributions to the limited partners;

(b)     Failed to properly value the limited partnership units in light of new drilling techniques, including horizontal drilling and fracking;

(c)     Failed to disclose to the limited partners the increase in value of their units due to the new techniques (drilling and fracking);

(d)     Failed to properly value limited partnerships units in light of the change in regulations that doubled the number of wells permitted;

(e)     Failed to disclose to the limited partners the increase in value of their units due to the change in local regulations that doubled the number of wells permitted;

(f)     Commissioned an appraisal report that failed to take into account the value of the new drilling techniques and change in regulation; and

(g)     Assigned an arbitrary value of $10,000 per well when it had in possession data that showed the Partnerships' assets had much greater value.

75.     By reason of the foregoing common wrongful course of conduct, defendant PDC breached its fiduciary obligations owed to plaintiffs and the other members of the Class. Merger Sub, acting as the instrument of PDC, also breached its fiduciary duties to the limited partners.

2392295v1/012711

25

76.    As a direct and proximate cause of defendant PDC's wrongful course of conduct, the named plaintiffs and the Class suffered damages, the exact extent of which will be proven at trial, and defendants were unjustly enriched.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray for judgment, as follows:

A.    Determine that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure.

B.    Declare that defendants have violated the 1934 Act and breached their fiduciary duties owed to plaintiffs and the Class.

C.    Award damages in favor of plaintiffs and the Class against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon.

D.    Award restitution and equitable relief to plaintiffs and the Class.

E.    Award of punitive damages.

F.    Award plaintiffs and the Class their reasonable attorneys' fees, costs and expenses incurred in this action, including expert fees.

G.    Award such other and further relief as the Court may deem just and proper.

Dated: August 31, 2012

MARC M. SELTZER
SUSMAN GODFREY L.L.P.

WILLIAM R.H. MERRILL
(Admitted Pro Hac Vice)
bmerrill@susmangodfrey.com
JAMES T. SOUTHWICK
(Admitted Pro Hac Vice)
jsouthwick@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666

LINDSEY N. GODFREY
(Admitted Pro Hac Vice)
lngodfrey@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880
Fax: (206) 516-3883

THOMAS G. FOLEY
ROBERT A. CURTIS
JUSTIN P. KARCZAG
FOLEY BEZEK BEHLE & CURTIS LLP

JOHN A. STILLMAN
GOOD WILDMAN HEGNESS & WALLEY


By _____
          Marc M. Seltzer
      Attorneys for Plaintiffs

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiffs demand trial by jury of all of the claims asserted in this complaint so triable.

Dated:  August 31, 2012                MARC M. SELTZER
                                        SUSMAN GODFREY L.L.P.

                                        WILLIAM R.H. MERRILL
                                        (Admitted Pro Hac Vice)
                                        bmerrill@susmangodfrey.com
                                        JAMES T. SOUTHWICK
                                        (Admitted Pro Hac Vice)
                                        jsouthwick@susmangodfrey.com
                                        SUSMAN GODFREY L.L.P.
                                        1000 Louisiana Street, Suite 5100
                                        Houston, TX  77002-5096
                                        Telephone:  (713) 651-9366
                                        Fax:  (713) 654-6666

                                        LINDSEY N. GODFREY
                                        (Admitted Pro Hac Vice)
                                        lngodfrey@susmangodfrey.com
                                        SUSMAN GODFREY L.L.P.
                                        1201 Third Avenue, Suite 3800
                                        Seattle, Washington  98101
                                        Telephone:  (206) 516-3880
                                        Fax:  (206) 516-3883

                                        THOMAS G. FOLEY
                                        ROBERT A. CURTIS
                                        JUSTIN P. KARCZAG
                                        FOLEY BEZEK BEHLE & CURTIS LLP

                                        JOHN A. STILLMAN
                                        GOOD WILDMAN HEGNESS & WALLEY


                                        By  Marc M. Seltzer
                                            Marc M. Seltzer
                                            Attorneys for Plaintiffs

2392295v1/012711                        28

**PROOF OF SERVICE**

I, Sandra L. Thomas, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1901 Avenue of the Stars, Suite 950, Los Angeles, California 90067-6029.

On August 31, 2012, I served copies of the following documents described as follows:

**FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS AND BREACH OF FIDUCIARY DUTY**

on the defendants in this action by placing true copies thereof enclosed in sealed envelopes addressed as stated on the attached service list, as follows:

XX   BY MAIL:
I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

____   BY PERSONAL SERVICE:
I caused to be delivered such envelope by hand delivery to the offices of the addressee.

____   BY FEDERAL EXPRESS OR OVERNIGHT COURIER
I caused to be delivered by Federal Express or overnight courier.

____   BY TELECOPIER
I served by facsimile as indicated on the attached service list.

XX   BY ELECTRONIC MAIL
I caused said documents to be prepared in portable document format (PDF) for e-mailing and served by electronic mail.

Executed on August 31, 2012, at Los Angeles, California.

1

2391964v1/012711

1

2   __XX__   (Federal)

3          I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

4

5   Sandra L. Thomas                                                                                                                                                                                                                *Sandra L. Thomas*

6   (Type or Print Name)                                                                       (Signature)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2391964v1/012711

**SERVICE LIST**

**ATTORNEYS FOR PLAINTIFFS**

Marc M. Seltzer
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Tel: (310) 789-3100
Fax: (310) 789-3150

William R.H. Medrrill
bmerrill@susmangodfrey.com
James T. Southwick
jsouthwick@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Tel: (713) 651-9366
Fax: (713) 654-6666

Lindsey N. Godfrey
lngodfrey@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Tel: (206) 516-3880
Fax: (206) 516-3883

Thomas G. Foley
tfoley@foleybezek.com
Robert A. Curtis
rcurtis@foleybezek.com
Justin P. Karczag
jkarczag@foleybezek.com
Kevin D. Gamarnik
kgamarnik@foleybezek.com
FOLEY BEZEK BEHLE & CURTIS, LLP
15 West Carrillo Street
Santa Barbara, CA 93101
Tel: (805) 962-9495
Fax: (805) 962-0722

John A. Stillman
jstillman@goodwildman.com
GOOD WILDMAN HEGNESS & WALLEY
5000 Campus Drive
Newport Beach, CA 92660
Tel: (949) 955-1100
Fax: (949) 833-0633

**ATTORNEYS FOR DEFENDANTS**

David Siegel
DSiegel@irell.com
Daniel P. Lefler
DLefler@irell.com
Caleb J. Bartel
CBartel@irell.com
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Tel: (310) 277-1010
Fax: (310) 203-7199

Attorneys for Defendants

3

2391964v1/012711

**Sandee Krueger**

| | |
|---|---|
| **From:** | cacd_ecfmail@cacd.uscourts.gov |
| **Sent:** | Thursday, September 06, 2012 11:44 AM |
| **To:** | ecfnef@cacd.uscourts.gov |
| **Subject:** | Activity in Case 8:11-cv-01891-AG-AN Jeffrey Schulein et al v. Petroleum Development Corporation et al Amended Complaint |

<span style="color:red">**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**</span>

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA

## Notice of Electronic Filing

The following transaction was entered on 9/6/2012 at 9:44 AM PDT and filed on 8/31/2012

| | |
|---|---|
| **Case Name:** | Jeffrey Schulein et al v. Petroleum Development Corporation et al |
| **Case Number:** | 8:11-cv-01891-AG-AN |
| **Filer:** | William J McDonald |
| | Linda Schulein |
| | Jeffrey Schulein |
| | Christopher J Rodenfels |
| | Robert H Barr |
| | Jane S Barr |
| | Christine L Cox |
| | Clay A Cox |
| | Matthew S Goldsmith |
| | Katherine M Goldsmith |
| | Timothy McDonald |
| | Judith A McDonald |
| | William J Wieseler |

**Document Number:** 54

**Docket Text:**

<span style="color:blue">**FIRST AMENDED COMPLAINT against defendants Petroleum Development Corporation, DP 2004 Merger Sub LLC; Party 2004 Merger Sub LLC terminated amending Complaint - (Discovery)[1],filed by plaintiffs Christopher J Rodenfels, Jeffrey Schulein, Linda Schulein, William J Wieseler, Robert H Barr, Clay A Cox, Judith A McDonald, William J McDonald, Matthew S Goldsmith, Jane S Barr, Timothy McDonald, Christine L Cox, Katherine M Goldsmith (twdb)**</span>

**8:11-cv-01891-AG-AN Notice has been electronically mailed to:**

Caleb J Bartel      cbartel@irell.com

David Siegel      dsiegel@irell.com, rgrazziani@irell.com

James T Southwick      jsouthwick@susmangodfrey.com, jmccrary@susmangodfrey.com

John A Stillman      jstillman@goodwildman.com

Justin P Karczag      jkarczag@foleybezek.com, cconnors@foleybezek.com, cwalker@foleybezek.com, ehuffman@foleybezek.com, kgamarnik@foleybezek.com, rbehle@foleybezek.com

Lindsey N Godfrey      lngodfrey@susmangodfrey.com, rshanks@susmangodfrey.com

Marc M Seltzer      mseltzer@susmangodfrey.com, sthomas@susmangodfrey.com

Robert Allen Curtis      rcurtis@foleybezek.com, cconnors@foleybezek.com, jkassity@foleybezek.com

Thomas Foley      tfoley@foleybezek.com, cconnors@foleybezek.com

William R H Merrill      bmerrill@susmangodfrey.com, skrueger@susmangodfrey.com

**8:11-cv-01891-AG-AN Notice has been delivered by First Class U. S. Mail or by other means <u>BY THE FILER</u> to :**

Christine L Cox


Clay A Cox


Jane S Barr


Judith A McDonald


Katherine M Goldsmith


Matthew S Goldsmith


Robert H Barr


Timothy McDonald

William J McDonald

William J Wieseler

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**SA11CV01891AG-FIRST AMENDED CMP.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=9/6/2012] [FileNumber=14258245-0]
[a1fbd26b9c628d346c531895ee0793d298a35382d065c9f29d0f9f37230d90f1d518
51b5ce0ec400fcb0d974221fe7016a8cfa73c6cf076b1c51365b2c28288b]]