IRELL & MANELLA LLP
David Siegel (101355)
DSiegel@irell.com
Bruce A. Wessel (116724)
BWessel@irell.com
Melissa R. McCormick (180384)
MMcCormick@irell.com
Charles Elder (186524)
CElder@irell.com

1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

Attorneys for Defendants and Counter-Claimant

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| JEFFREY SCHULEIN, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> PETROLEUM DEVELOPMENT CORPORATION and DP 2004 MERGER SUB LLC, <br><br> Defendants. <br><br> AND RELATED COUNTER CLAIM | Case No. SACV 11-1891 AG (ANx) <br><br> **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT** <br><br> Hon. Andrew J. Guilford <br><br> Date: April 28, 2014 <br> Time: 10:00 a.m. <br> Ctrm: 10-D <br><br> Discovery Cut-Off: February 20, 2014 <br> Pre-Trial Conference: May 5, 2014 <br> Trial: May 20, 2014 |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

# **TABLE OF CONTENTS**

**Page**

I.      SUMMARY OF ARGUMENT ................................................................1

II.     UNDISPUTED FACTS ......................................................................4

III.    BACKGROUND FACTS AND PROCEDURAL HISTORY .......................5

    A.      CHRONOLOGY: 2002 – 2011 ...............................................5

    B.      THE BUSINESS AND TERMS OF THE
            PARTNERSHIPS: WHAT THE INVESTORS WERE
            OFFERED AND BOUGHT ........................................................6

    C.      THE TAX STRATEGY:  WHAT PLAINTIFFS
            DEDUCTED ........................................................................8

    D.      THE PROXY AND THE BUYBACK: WHAT PDC
            DISCLOSED ........................................................................9

    E.      THE RULING ON THE MOTION TO DISMISS ...........................9

IV.     LEGAL STANDARD ......................................................................10

V.      ARGUMENT ................................................................................10

    A.      FULL SUMMARY JUDGMENT IN FAVOR OF
            MERGER SUB SHOULD BE ENTERED ON THE
            STATE LAW FIDUCIARY DUTY CLAIM ...............................11

    B.      PARTIAL SUMMARY JUDGMENT IN FAVOR OF
            PDC SHOULD BE ENTERED ON THE STATE LAW
            FIDUCIARY DUTY CLAIM ..............................................11

        1.      PDC Had No Right to Drill New Wells For Any Of
                The Partnerships After Year One Of The
                Partnerships ..............................................................12

        2.      PDC Had No Right to Borrow Or Raise New Funds
                On Behalf Of The Partnerships ...................................15

        3.      PDC Did Not Have A Duty To Amend The
                Partnership Agreements And Did Not Have A Duty
               To Attempt To Negotiate All Imaginable
                Transactions ............................................................17

    C.      FULL SUMMARY JUDGMENT IN FAVOR OF
            DEFENDANTS SHOULD BE ENTERED ON THE
            SECTION 14(a) CLAIM ..................................................19

    D.      ALTERNATIVELY, PARTIAL SUMMARY
            JUDGMENT IN FAVOR OF DEFENDANTS SHOULD
            BE ENTERED ON THE SECTION 14(a) CLAIM .......................19

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

**Page**

1.  PDC's Disclosure Relating To Discount Rates Is
    Not Actionable...................................................................20

2.  PDC's Omission of a Disclosure On "Probable" And
    "Possible" Reserves Is Not Actionable....................................21

3.  PDC's Disclosures Relating To The Special
    Transactions Committee And Alternatives Are Not
    Actionable...........................................................................22

E.  THE LEGAL ISSUE OF WHAT THE PARTNERSHIPS
    OWNED SHOULD BE SUMMARILY ADJUDICATED:
    THE PARTNERSHIPS OWNED WELLBORES, NOT
    LAND.................................................................................23

F.  SUMMARY JUDGMENT SHOULD BE ENTERED IN
    DEFENDANTS' FAVOR ON THE CLAIM FOR
    PUNITIVE DAMAGES ........................................................25

VI.  CONCLUSION ............................................................................25

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Abrahamson v. W. Sav. & Loan Ass'n*,
   1991 WL 266782, 951 F.2d 358 (9th Cir. 1991) ............................................ 21

*Allen v. Penn Cent. Co.*,
   350 F. Supp. 697 (E.D. Pa. 1972) ..................................................................... 23

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) .......................................................................................... 21

*Brody v. Transitional Hospitals Corp.*,
   280 F.3d 997 (9th Cir. 2002) ............................................................................ 22

*Brown v. Brewer*,
   2010 WL 2472182 (C.D. Cal. 2010) ................................................................ 10

*Gould v. Am.-Hawaiian S.S. Co.*,
   535 F.2d 761 (3d Cir. 1976) ............................................................................. 25

*Hill v. Bache Halsey Stuart Shields Inc.*,
   790 F.2d 817 (10th Cir. 1986) .......................................................................... 12

*Hubka v. Paul Revere Life Ins. Co.*,
   215 F.Supp.2d 1089 (S.D.Cal.2002) ................................................................ 25

*In re Plains Exploration & Prod. Co. Stockholder Litig.*,
   No. CIV.A. 8090-VCN, 2013 WL 1909124 (Del. Ch. May 9,
   2013) .................................................................................................................. 20

*In re Zoran Corp. Derivative Lit.*,
   511 F. Supp. 2d 986 (N.D. Cal. 2007) ............................................................. 19

*Ittella Foods, Inc. v. Zurich Ins. Co.*,
   98 F. App'x 689 (9th Cir. 2004) ....................................................................... 25

*Koller v. Hilderbrand*,
   933 F. Supp. 2d 272 (D. Conn. 2013) .............................................................. 10

*Lane v. Page*,
   649 F. Supp. 2d 1256 (D.N.M. 2009) .............................................................. 22

*Mills v. Electric Auto-Lite Co.*,
   396 U.S. 375 (1970) .......................................................................................... 19

*Rice v. Hamilton Oil Corp.*,
   658 F. Supp. 446 (D. Colo. 1987) .................................................................... 22

*Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co of Pittsburgh*,
   64 F.3d 1282 (9th Cir. 1995) ............................................................................ 25

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010

- iii -

**Page(s)**

*San Francisco Baykeeper v. Levin Enterprises, Inc.*,
    2013 WL 6672415 (N.D. Cal. 2013) ............................................................ 10

*Starkman v. Marathon Oil Co.*,
    772 F.2d 231 (6th Cir. 1985) ..................................................................... 21

*Sunray DX Oil Co. v. Helmerich & Payne, Inc.*,
    *398 F.2d 447 (10th Cir.1968)* ................................................................... 22

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) ................................................................................... 20

*Umbriac v. Kaiser*,
    467 F. Supp. 548 (D. Nev. 1979) ............................................................... 23

*Virginia Bankshares, Inc. v. Sandberg*,
    501 U.S. 1083 (1991) ............................................................................ 19, 21

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
    435 F.3d 989 (9th Cir. 2006) ..................................................................... 10

**Statutes**

17 C.F.R. § 210.4-10(a)(17-18, 22) ................................................................ 21

W. Va. Code § 47-9 (2013) ...................................................................... 11, 12

W. Va. Code § 47B (2013) ................................................................... passim

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................... 10

**Other Authorities**

D. Weidner & J. Larson, "The Revised Uniform Partnership Act:  The
    Reporters' Overview," 49 Bus. Law 1 (November 1993) ........................... 11

J.D. Hynes, "Fiduciary Duties and RUPA: An Inquiry Into Freedom of
    Contract," 58 Law and Contemporary Problems No. 2 at 29
    (Spring 1995) ............................................................................................. 11

Securities Act Release No. 6008, 1978 WL 195742, reprinted in [1978
    Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 81,768, at 81,104
    (Dec. 19, 1978) .......................................................................................... 21

Securities Act Release No. 6383, 1982 WL 90370, reprinted in [1937-
    1982 Accounting Series Release Transfer Binder] Fed. Sec. L.
    Rep. (CCH) ¶ 72,328, at 63,003 (March 3, 1982) ..................................... 21

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

## I.      SUMMARY OF ARGUMENT

Plaintiffs allege two claims against Defendants Petroleum Development Corporation ("PDC") and DP 2004 Merger Sub LLC ("Merger Sub") in connection with the 2010 and 2011 buyback of Plaintiffs' interests in oil and gas drilling partnerships – violation of Section 14(a) of the Securities Exchange Act of 1934 ("Section 14(a)") and breach of fiduciary duty under West Virginia state law.  By granting this motion, in full or in part, the Court will narrow this case.

Plaintiffs' arguments are without legal merit and should not be permitted to continue further.  In large measure, Plaintiffs are suing Defendants for not doing what they had promised they would not do.  Under no recognized legal theory is keeping a promise a breach of fiduciary duty or a violation of disclosure rules.

*First,* we first address the fiduciary duty claim, which is governed by West Virginia law pursuant to the applicable partnership agreements.  Because Merger Sub was not a partner in any of the partnerships, it owed no fiduciary duty to Plaintiffs.  Its motion for summary judgment on the fiduciary duty claim should be granted.  *See* Section V.A.

Because PDC was a general partner of the limited partnerships, it did owe a fiduciary duty to the Plaintiffs.  PDC seeks partial summary judgment to limit the fiduciary duty claim against it in three ways:

One.  West Virginia partnership law, based on the Revised Uniform Partnership Act ("RUPA"), recognizes the importance of the partnership agreement in defining partner duties.  Here, each of the partnerships was structured so that all of Plaintiffs' investments in that partnership would be used for drilling wells in the first year of the partnership's operations, after which that partnership would not drill any new wells.  PDC would then operate and maintain that partnership's existing wells.  This transition from the business of drilling wells to the business of operating them was central to the investment structure, which was designed to provide prompt tax write-offs to investors.  PDC made repeated promises to investors that their

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010

- 1 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

1  funds would only be used in accordance with the limitations set forth in the offering

2  documents and agreements.

3      All of the partnerships in this case began operations in or before 2005 and so

4  the right to drill ended by 2006.  PDC did not have the contractual right to use

5  partnership funds to drill new wells in 2010 or 2011, the period at issue in this case.

6  Indeed, PDC had promised that it would not do so.  Yet one of the Plaintiffs' prime

7  arguments is that PDC breached its fiduciary duties by not planning to drill new

8  vertical and horizontal wells in and after 2010 and failing to disclose imagined

9  opportunities for the partnerships to participate in such drilling opportunities.

10  Partial summary judgment should be entered that after 2006 PDC had no right,

11  much less a duty, to drill new wells for the Partnerships.

12      In interrogatories, PDC asked each Plaintiff the basis for the argument that

13  PDC had a duty or obligation to drill new vertical or horizontal wells.  Plaintiffs

14  were candid.  They said they had no answer to the question.  Roth Decl. Ex. 16

15  (Response to Interrogatory No. 8).  When asked more generally, Plaintiffs cited a

16  provision of the partnership agreements imposing a duty on PDC "for the

17  safekeeping and use of all funds and assets" of the Partnerships.  *Id.* Ex. 16

18  (Response to Interrogatory No. 9).  Plaintiffs are wrong that this "safekeeping of

19  funds" requirement somehow created the right and the obligation to risk partnership

20  funds on new well drilling projects.  The letter and spirit of the partnership

21  agreements, and the promises that PDC made in the offering prospectuses about the

22  investment, barred PDC from such spending because the drilling phase of each of

23  the partnerships was limited to the first year.  Expenditures of partnership funds for

24  new well drilling by PDC many years after the first year would have been an

25  improper use of partnership funds, the opposite of keeping it safe.  Plaintiffs' "duty

26  to drill new wells" breach of fiduciary duty argument is meritless and partial

27  summary judgment should be granted to eliminate that part of the fiduciary duty

28  claim from this case.  *See* Section V.B.1.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010

- 2 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

1    <u>Two.</u>  Similarly meritless is Plaintiffs' contention that the Partnerships "could,

2    in fact, have borrowed or raised funds" (FAC ¶ 54) and that PDC had a duty to offer

3    to do so on their behalf.  Eleven of the agreements expressly prohibited borrowing,

4    and all intentionally restricted PDC's right to raise new capital.  That was by design.

5    If PDC wanted to raise new capital it needed to go back to the capital markets and

6    find new investors.  It could not encumber these Partnerships with debt or otherwise

7    encumber assets.  Partial summary judgment should be granted eliminating the

8    "failing to borrow" or "failing to raise new funds" breach of fiduciary duty

9    argument.  *See* Section V.B.2.

10   <u>Three.</u>  Plaintiffs effectively contend that PDC had a duty to amend the

11   partnership agreements and, also, a duty to negotiate with hypothetical third parties

12   about a laundry list of hypothetical different kinds of transactions (rather than to

13   itself offer to buy back partnership interests).  No such duties exist.  The applicable

14   West Virginia statute limits fiduciary duties to the duty of loyalty and the duty of

15   care.  There is no duty to amend.  Further, merely pursuing a partner's own interest

16   is not a violation of law.  There was no duty to negotiate with hypothetical third

17   parties about hypothetical alternatives to PDC's purchase offer.  *See* Section V.B.3.

18   ***Second,*** Defendants also seek summary judgment and partial summary

19   judgment on Plaintiffs' Section 14(a) claim, which alleges material

20   misrepresentations or omissions in connection with a proxy.

21   In their own words, "Plaintiffs . . . expressly disclaim and disavow . . . any

22   allegation . . . that could be construed as alleging [that Defendants committed]

23   fraud."  FAC ¶ 70.  Because no fraud is alleged, summary judgment should be

24   granted in Defendants' favor on the Section 14(a) claim.  Whether *scienter* is

25   required in post-merger Section 14(a) claims is a question that the U.S. Supreme

26   Court has left open, but this Court can and should decide the issue now and

27   conclude that *scienter* is required and is not present here.  *See* Section V.C.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010                              - 3 -                   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
                                                            AND PARTIAL SUMMARY JUDGMENT
                                                            CASE NO. SACV 11-1891 AG (ANx)

1  Alternatively, partial summary judgment should be entered on the Section
2  14(a) claim to eliminate three of Plaintiffs' alleged misrepresentations or omissions:

3  <u>One.</u>  PDC disclosed the discount rates it used in calculating the buyout price
4  (15% and 25%) as well as an alternative discount rate (required by the SEC for
5  reporting purposes) that it was not using (10%).  PDC also accurately stated that the
6  rates used were within the range used in the industry.  There was no actionable
7  misrepresentation by Defendants related to the discount rates.  *See* Section V.D.1.

8  <u>Two.</u>  PDC did not assign value to "possible" or "probable" reserves, just
9  proven reserves.  Settled law supports this decision and makes the omission of
10  "possible" and "probable" reserve values non-actionable.  *See* Section V.D.2.

11  <u>Three.</u>  The proxies disclosed the work of a special PDC committee and a
12  summary of alternatives considered by that committee.  The minutes of the
13  committee meetings and the testimony of its chairman show that alternatives were
14  considered.  The disclosures were sufficient.  There is certainly no obligation to
15  disclose every imagined hypothetical alternative transaction, including those that
16  were inconsistent with the terms of the agreements.  There were no actionable
17  omissions relating to alternative transactions.  *See* Section V.D.3.

18  ***Third,*** there is a legal issue that can and should be decided summarily – what
19  the partnerships owned.  According to the relevant legal documents, the partnership
20  owned interests in wells (wellbores).  This is a matter of contract interpretation and
21  can be decided as a matter of law.  *See* V.E.

22  ***Finally,*** given Plaintiffs' disavowal and disclaimer of fraud and applicable
23  law, Plaintiffs' demand for punitive damages should be stricken.  *See* Section V.F.

24  **II.   UNDISPUTED FACTS**

25  The undisputed facts that support the arguments in this motion are: the
26  prospectuses, partnership agreements, and proxies (UF 1-20); the dates of the
27  closings and partnership conversions (UF 29-44); testimony and a survey about
28  discount rates (UF 24-26); testimony of plaintiffs, their advisors and experts,

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010                          - 4 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

Case 1:17-cv-03079-RBJ   Document 14-3   Filed 02/22/18   USDC Colorado   Page 10 of 30
Case 8:11-cv-01891-AG-AN   Document 122-1   Filed 03/24/14   Page 10 of 30   Page ID
#:8820

1  interrogatory responses, and a document received (UF 45-47, 50, 64-66); documents

2  re: assignment of working interests (UF 48-49); and testimony and a document

3  about the work of the PDC Special Transactions Committee (UF 21-23).

4  **III.   BACKGROUND FACTS AND PROCEDURAL HISTORY**

5      **A.   CHRONOLOGY: 2002 – 2011**

6      This case concerns Plaintiffs' investments in twelve limited partnerships that

7  PDC formed between 2002 and 2005 (the "Partnerships").  First Amended

8  Complaint ("FAC") ¶ 28.  Prior to the formation of the Partnerships, PDC issued

9  prospectuses and provided tax opinion letters outlining PDC's plans for the

10  Partnerships and their tax benefits.  Each of the Partnerships was governed by a

11  partnership agreement.  FAC ¶¶ 27, 32-36.  After the closing of each partnership,

12  PDC used the funds invested to drill oil and gas wells.  The drilling phase for each

13  partnership lasted a matter of months.  When the wells started producing oil and gas,

14  Plaintiffs started receiving monthly distributions.

15      Plaintiffs received substantial tax benefits in the first year of each

16  partnership's operations because of tax deductions allowed for the intangible drilling

17  costs associated with drilling for oil and gas. Stump Decl. Ex. 1 at 6, 84-85.  For tax

18  reasons, most of the investors (including a majority of the named Plaintiffs) were

19  initially general partners of the Partnerships.  As PDC explained in a brochure on

20  the offering, "[m]ost investors need to be . . . general partners during the drilling

21  process to fully utilize tax deductions, but [they will be] converted to limited partner

22  status when drilling is completed, generally 6-9 months after the partnership is

23  closed." Roth Decl. Ex. 15 at 179.  That is what, in fact, happened.  Stump Decl. ¶¶

24  36-50 (conversions took place for all partnerships).

25      In 2010 and 2011, PDC issued proxies to buy out Plaintiffs.  (FAC ¶ 38-40).

26  After the proxies were issued, votes were held and the buyouts approved by wide

27  margins.  FAC ¶¶ 57-59, Stump Decl. ¶¶ 52-64.  Five years had elapsed between the

28  last partnership formation in 2005 and the first buyback offer in 2010.

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010

- 5 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

Case 1:17-cv-03079-RBJ   Document 14-3   Filed 02/22/18   USDC Colorado   Page 11 of 30
Case 8:11-cv-01891-AG-AN   Document 122-1   Filed 03/24/14   Page 11 of 30   Page ID
#:8821

**B.      THE BUSINESS AND TERMS OF THE PARTNERSHIPS:**
         **WHAT THE INVESTORS WERE OFFERED AND BOUGHT**

Investment opportunities are commonly structured as partnerships with the promoter the general partner who manages the business.[1]  Here, PDC formed many oil and gas drilling partnerships with PDC as the general partner.  FAC ¶¶ 2, 7, 29.  For companies that manage multiple partnerships, each partnership tends to have a defined focus in time, or business mission, or both, as was the case here.

PDC's prospectuses explained that PDC operated many partnerships and PDC was forming new ones to "drill, own, and operate natural gas and oil wells" (Stump Decl. Ex. 1 at 2) under a defined structure and specific terms:

- There would be a "series" of up to 12 new partnerships over a number of years with caps on how much money each partnership could raise and limits for how long each offering would remain open.  *Id.* at 2.  Each partnership would be "a separate and distinct business and economic entity from each other partnership . . . with no interest in any of the other partnerships (unless [the investor] also invest[ed] in other partnerships)."  *Id.* at 20.

- There would be a beginning and an end to each partnership's drilling program.  All funds in each partnership would be "expended or committed" within 12 months of the closing.  If not, the unused funds would be returned to the investors.  *Id.*  For each partnership, PDC promised: "We will not drill any wells beyond the initial wells."  *Id.* at 27.

- Around 88% of the amount invested would be deductible from taxable income, largely in the first year, as "intangible drilling costs."  *Id.* at 6, 84.

- At least 90% of the invested capital would be used for "comparatively lower risk development wells."  *Id.* at 37.  Such wells would be drilled "within the

---

[1] *See, e.g., Handelsman v. Bedford Village Associates Limited Partnership*, 213 F.3d 48 (2d Cir. 2000) (17 real estate partnerships, each with the same general partner).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010                                    - 6 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

Case 1:17-cv-03079-RBJ   Document 14-3   Filed 02/22/18   USDC Colorado   Page 12 of 30
Case 8:11-cv-01891-AG-AN   Document 122-1   Filed 03/24/14   Page 12 of 30   Page ID
#:8822

1    proved area of an oil or gas reservoir."  Stump Decl. Ex. 4 at 660 (§1.08(l)).[2]

2    PDC promised that less than 10% of the funds could ever be used for higher

3    risk exploratory drilling.[3]

4    •  Investors would receive distributions monthly if the wells were successful,

5       with the first distributions possible within six months of the closing.  Stump

6       Decl. Ex. 1 at 6.

7    In short, a prospective investor was told and promised that all of an investor's

8    funds would be used to drill largely low-risk wells in the first year ("Year One") so

9    that the investor would receive a tax deduction in Year One with the potential for

10   monthly distributions also starting in Year One.  No wells beyond the Year One

11   wells would be drilled.  If investors wanted to make new investments in additional

12   wells, they would invest in a new partnership.

13   The prospectus contained charts showing returns for dozens of previous PDC

14   partnerships over more than a decade.  *Id.* at 70-71.  These charts showed that a big

15   part of the return was the upfront tax benefit derived from tax deductions for the

16   drilling of the wells in Year One.  PDC explained that it had experience in drilling

17   and operating over 2,400 wells and was then managing about 70 limited

18   partnerships.  *Id.* at 56.  With so much drilling activity and so many partnerships the

19   possibility of conflicts was inevitable, and PDC told that to investors:  "Through

20   [PDC's] involvement in partnership and other non-partnership activities, the

21   Managing General Partner [PDC] and its affiliates have interests which conflict with

22   _____

23   [2] Named plaintiff Rodenfels testified that he understood these partnerships

24   were lower risk investments like bonds.  He was told, "PDC is the type of company

     that goes for singles instead of home runs in the drilling business.  They don't take

25   risk." Roth Decl. Ex. 12 at 106-107.

26   [3] The Rockies Region partnership had the split 80/20 instead of 90/10.  For

27   that partnership a minimum of 80% of the capital would be spent on development

     wells and a maximum of 20% on exploratory wells.  Stump Decl. Ex. 15 at 1260

28   (§5.02(a)(i)).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010                                                                                  - 7 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

Case 1:17-cv-03079-RBJ Document 14-3 Filed 02/22/18 USDC Colorado Page 13 of 30
Case 8:11-cv-01891-AG-AN Document 122-1 Filed 03/24/14 Page 13 of 30 Page ID
#:8823

those of the investor partners; actions taken by the Managing General Partner in furtherance of its own interests could result in the partnerships being less profitable . . . ." *Id.* at 12. The twelve Partnerships that are the subject of this suit also could have arguable conflicts with each other. But, PDC explained that because of the limited time frame of the business of any one partnership – all investments in new wells would take place in the months after the closing – opportunities for new wells would generally be handled in order of partnership formation. PDC stated: "We anticipate that generally only one partnership will be actively engaged in drilling at any time." *Id.* at 61. Thus older partnerships would avoid conflicts with newer partnerships because, as PDC explained: "We will not drill any wells beyond the initial wells" for each Partnership. *Id.* at 27.

## C. THE TAX STRATEGY: WHAT PLAINTIFFS DEDUCTED

PDC represented to investors that they would "realize immediate tax benefits by deducting a large part of their investment," but noted that investors had to be "general partners during the drilling process to fully utilize the tax deductions." Roth Decl. Ex. 15 at 179. General partners (but not limited partners) would be "able to use partnership deductions against any source of income." *Id.* at 189. This was not risk-free because general partners would have unlimited personal liability. Thus, the objective was to keep the drilling process as short as practicable and then convert the general partner investors into limited partners. Investors were told: "PDC limits the period of investor risk by automatically converting investors to limited partner status when the activities that generate the deductions are complete – generally 6 to 9 months after a partnership is closed." *Id.* The program thus had "features that limit the time period when investors are at risk." *Id.*

In connection with the offering, PDC provided to investors a tax opinion letter from law firm Duane Morris LLP confirming that the tax structure worked as described, including the valuable deductions to ordinary income afforded general partners. That opinion was based on the assumption that the Partnerships would "at

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010                                    - 8 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

Case 1:17-cv-03079-RBJ   Document 14-3   Filed 02/22/18   USDC Colorado   Page 14 of 30
Case 8:11-cv-01891-AG-AN   Document 122-1   Filed 03/24/14   Page 14 of 30   Page ID
#:8824

1    all times be operated in accordance with the terms of the Partnership Agreement

2    [and] the Prospectus . . . ." Stump Decl. Ex. 1 at 184.[4]  The named Plaintiffs alone

3    sheltered millions of dollars from income taxes because of the careful structuring of

4    the partnerships.  Most investors were, initially, general partners.

5         When the drilling and deducting were done, PDC converted the general

6    partners to limited partners as promised.  Stump Decl. ¶¶ 36-48.  That happened

7    during Year One, and letters were sent to investors announcing the GP to LP

8    conversion.  Stump Decl. ¶ 49; Roth Decl. Ex. 6.  Notice was also provided on

9    investor account statements.  Stump Decl. ¶ 49; Roth Decl. Ex. 5 at 42.  In addition,

10   PDC recorded notices in West Virginia, the formation state of the Partnerships.

11   Stump Decl. ¶ 50; Roth Decl. Ex. 7.

12   ### D.    THE PROXY AND THE BUYBACK: WHAT PDC DISCLOSED

13        More than five years after the partnerships were formed, PDC issued proxies

14   to buy back the limited partnership interests at a per-unit price set for each

15   partnership.  PDC told the limited partners that PDC believed the buyback

16   transactions would benefit PDC and that PDC intended to exploit the assets for

17   profit "due to the potential realization of significant synergies relating to

18   accelerating the pace of refracturing the partnership's wells, achieving scale

19   efficiencies and optimizing revenue opportunities." Stump Decl. Ex. 16 at 1315.

20   PDC also disclosed the discount rates it used in the present value calculation and

21   that a different and lower discount rate was used for SEC reporting.  Stump Decl.

22   Ex. 16 at 1350-51.

23   ### E.    THE RULING ON THE MOTION TO DISMISS

24        In 2012 this Court denied Defendants' Rule 12(b)(6) motion to dismiss.  Order

25   (June 15, 2012) ("Order").  Defendants' main argument in the motion to dismiss

26   _____

27        [4] Pursuant to Section 2.02(c) and (d), PDC was to handle investor funds "in

28   accordance with the provisions [and terms] of the Prospectus." Stump Decl. Ex. 4 at
     667.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010                                          - 9 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

Case 1:17-cv-03079-RBJ   Document 14-3   Filed 02/22/18   USDC Colorado   Page 15 of 30
Case 8:11-cv-01891-AG-AN   Document 122-1   Filed 03/24/14   Page 15 of 30   Page ID
#:8825

1   concerned the Section 14(a) claim.  Order 7-13.  In the motion to dismiss,

2   "Defendants [did] not directly attack Plaintiff's claim for breach of fiduciary duty."

3   Order 13.  The Court noted that certain of Defendants' "fact-based arguments are

4   more appropriate for summary judgment, or for the ultimate trier of fact."  Order 10.

5   On August 31, 2012, Plaintiffs filed a First Amended Complaint, which identifies

6   and limits the issues in this case.  *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435

7   F.3d 989, 991 (9th Cir. 2006).

8   **IV.   LEGAL STANDARD**

9        Federal Rule of Civil Procedure 56(a) provides:  "A party may move for

10  summary judgment, identifying each claim or defense – or the part of each claim or

11  defense – on which summary judgment is sought.  The court shall grant summary

12  judgment if the movant shows that there is no genuine dispute as to any material fact

13  and the movement is entitled to judgment as a matter of law."  Courts have granted

14  summary judgment to narrow breach of fiduciary duty claims.  *See, e.g., Brown v.*

15  *Brewer*, 2010 WL 2472182, at *3 and *18 (C.D. Cal. 2010) (granting summary

16  judgment on part of fiduciary duty claim).  If a court denies summary judgment on a

17  claim it can, under Rule 56(g), grant summary adjudication to narrow the issues in a

18  case while retaining power to adjudicate claims.  *See, e.g., San Francisco Baykeeper*

19  *v. Levin Enterprises, Inc.*, 2013 WL 6672415, at *5 and *22 (N.D. Cal. 2013)

20  (granting summary adjudication on certain issues); *Koller v. Hilderbrand*, 933 F.

21  Supp. 2d 272, 284 (D. Conn. 2013) (granting summary judgment motion in part and

22  further narrowing issues for trial under Rule 56(g)).

23  **V.   ARGUMENT**

24       To determine the scope of fiduciary duties, this Court must examine both the

25  partnership documents and the applicable statutes.

26

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

Case 1:17-cv-03079-RBJ   Document 14-3   Filed 02/22/18   USDC Colorado   Page 16 of 30
Case 8:11-cv-01891-AG-AN   Document 122-1   Filed 03/24/14   Page 16 of 30   Page ID
#:8826

**A. FULL SUMMARY JUDGMENT IN FAVOR OF MERGER SUB SHOULD BE ENTERED ON THE STATE LAW FIDUCIARY DUTY CLAIM**

While PDC was a general partner of the Partnerships, defendant Merger Sub was not.  Accordingly Merger Sub's motion for summary judgment on the fiduciary duty claim should be granted.

**B. PARTIAL SUMMARY JUDGMENT IN FAVOR OF PDC SHOULD BE ENTERED ON THE STATE LAW FIDUCIARY DUTY CLAIM**

PDC's fiduciary duties are governed by West Virginia law.  FAC ¶ 8 (claims arise under state law for fiduciary duty); Stump Decl. Ex. 4 at 657.  The West Virginia Uniform Limited Partnership Act is codified at Section 47-9 of the West Virginia Code ("Section 47-9") and incorporates parts of the West Virginia Uniform Partnership Act, codified at Section 47B ("Section 47B").  W. Va. Code § 47-9 (2013); W. Va. Code § 47B (2013).  Section 47B was adopted in 1995 and was modeled on the Revised Uniform Partnership Act ("RUPA"), a significant revision of partnership law.  *See generally* D. Weidner & J. Larson, "The Revised Uniform Partnership Act:  The Reporters' Overview," 49 Bus. Law 1 (November 1993) ("Weidner & Larson").[5]  RUPA made important policy choices (as can be seen in the statutory language in Section 47B addressed below):  "Across all substantive areas, RUPA reflects the policy judgment that, with rare exceptions, partners are permitted to govern relations among themselves by agreement."  Weidner & Larson at 2.  "[T]he basic principle is that the agreement of partners is supreme . . . ."  *Id.* at 3.  This is reflected in Section 47B-1-3(a): "[with certain exceptions] relations

---

[5] *See also* J.D. Hynes, "Fiduciary Duties and RUPA: An Inquiry Into Freedom of Contract," 58 Law and Contemporary Problems No. 2 at 29, 32 (Spring 1995) (recognizing drafters' concern for the "value of certainty and reliability of partnership agreements").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010                                    - 11 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

1   among the partners and between the partners and the partnership are governed by

2   the partnership agreement."[6]

3      Under Section 47-9-24(a) the acts of a general partner of a limited partnership

4   are governed by Section 47B.  Section 47B-1-3(a) provides: "Except as otherwise

5   provided in subsection (b) of this section, relations among the partners and between

6   the partners and the partnership are governed by the partnership agreement."

7   Section 47B-1-3(b) provides, however, that the partnership agreement cannot

8   eliminate the duty of loyalty provided for in Section 47B-4-4(b) and cannot

9   unreasonably reduce the duty of care under Section 47B-4-4(c).  Section 47B-4-4(a)

10   provides that the "only fiduciary duties a partner owes to the partnership and the

11   other partners are the duty of loyalty and the duty of care set forth in subsections (b)

12   and (c) of this section."

13      The structure of the partnership agreements and the offering as explained in

14   the prospectuses are central to an understanding of what PDC as a general partner

15   could and could not do in 2010 and 2011.

16      **1.**   **PDC Had No Right to Drill New Wells For Any Of The**

17          **Partnerships After Year One Of The Partnerships**

18      When PDC promised that it would offer a "series" of partnerships, it meant

19   just that.  One partnership would follow another, up to four a year.[7]  When one

20

21   ───────────────

   [6] Case law recognizes the importance of limiting open-ended breach of

22   fiduciary duty claims and, where appropriate, disposing of such claims on summary

23   judgment. See, e.g., *Opus Corp. v. IBM*, 141 F.3d 1261 (8th Cir. 1998) (affirming

   summary judgment in favor of general partner on fiduciary duty claim alleging self-

24   dealing) (Minnesota law); *Welch v. Via Christi Health Partners, Inc.*, 281 Kan. 732

25   (2006) (affirming summary judgment in favor of general partner on fiduciary duty

   claim, plaintiffs "must establish something above and beyond self-interest or self-

26   dealing") (Kansas law).  It is error not to define and appropriately limit the scope of

27   fiduciary duty.  *See, e.g., Hill v. Bache Halsey Stuart Shields Inc.*, 790 F.2d 817

   (10th Cir. 1986) (reversing jury verdict finding breach due to error in jury

28   instructions on the scope of fiduciary relationship) (Colorado law)

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010

- 12 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

Case 1:17-cv-03079-RBJ   Document 14-3   Filed 02/22/18   USDC Colorado   Page 18 of 30
Case 8:11-cv-01891-AG-AN   Document 122-1   Filed 03/24/14   Page 18 of 30   Page ID
#:8828

1   partnership had reached the end of a set timeframe (measured in months), that

2   partnership would stop drilling.  As that partnership's drilling phase ended, the next

3   partnership's drilling would begin.  This was by design.  There were many smaller

4   partnerships, rather than one big one, to generate prompt and predictable upfront tax

5   deductions and to limit the period that an investor had to be a general partner.

6          These limitations were set out in the partnership agreement and intentionally

7   restricted PDC's right to drill outside the first year window.  Section 2.02(e) even

8   required that money "not used" in the first year be returned:  "any proceeds of the

9   offering of Units for sale pursuant to the Prospectus not used, committed for use, or

10   reserved as operating capital in the Partnership's operations within one year after the

11   closing of such offering shall be distributed pro rata to the Investor Partners as

12   return of capital and the Managing Partner shall reimburse such Investors for [fees

13   and expenses]."  Stump Decl. Ex. 4 at 667.  This structure was explained in the

14   Prospectus:  "We anticipate that within 12 months following the formation of a

15   partnership it will have expended or committed all subscriptions for partnership

16   operations.  We will return any unexpended and/or uncommitted subscriptions at the

17   end of the 12-month period pro rata to the investor partners and we will reimburse

18   those partners for organization and offering costs and the management fee allocable

19   to the return of capital."  Stump Decl. Ex. 1 at 20-21.

20          After the wells started to produce, PDC had the right to retain rather than

21   distribute Partnership earnings for certain defined "development costs," but PDC

22   promised investors, "We will not drill any wells beyond the initial wells.  Additional

23   development refers to work necessary or desirable to enhance production from

24   existing wells." *Id.* at 27.  So PDC would make monthly distributions or, in its

25

26

----

27          [7] Consistent with this schedule, this case concerns four PDC partnerships
     created in 2003 (2003A through D) and four partnerships created in 2004 (2004A
28   through D), plus a smaller number of partnerships in 2002 and 2005.  FAC ¶ 1 n.1.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010                                    - 13 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

1   judgment and discretion, use such earnings to "enhance production from existing

2   wells."  But it would not and it could not drill new wells with partnership earnings.

3      For a partnership formed in December 2002, the invested funds would be

4   fully used, committed or reserved for drilling and operations or returned by

5   December 2003, and so forth.  As the last Partnerships in this proceeding were

6   formed in December 2005, all funds had to be put to use by December 2006, at the

7   latest.  At that point, PDC promised that it would not drill any more wells for these

8   partnerships.  It would have been a breach of contract and of fiduciary duty to do so.

9      By 2010 and 2011, PDC did not have a right to drill new wells for the

10  Partnerships involved in this case.  If PDC had asked for a legal opinion in 2010

11  whether it had a right to drill new wells with Partnership money, it would have been

12  told no.  If PDC had nevertheless drilled new wells in 2010 or 2011 and squandered

13  the Partnerships' money on dry holes in the process (or unprofitable natural gas

14  drilling), limited partners seeking legal advice as to whether they had claims would

15  have been told yes, PDC would have breached its contractual and fiduciary duties by

16  using Partnership earnings to drill new wells when it promised not to do that.

17      When asked why PDC had the obligation to drill in 2010 and 2011, Plaintiffs

18  cited only to Section 5.02(n) of the partnership agreement (5.02(o) in the 2004

19  partnership agreements), which required that funds be protected by PDC and only

20  used in furtherance of the partnership's business. Roth Decl. Ex. 16 at 207-208;

21  Stump Decl. Ex. 4 at 678; Ex. 9 at 920.  By 2010 the business of the Partnerships

22  was solely focused on existing wells, not drilling new ones.  Section 5.02(n) does

23  not authorize or require drilling new wells in Year Five, Six, Seven, or Eight.  To

24  the contrary, it prohibited drilling new wells because that wasn't safeguarding assets.

25      Section 47B-4-4(d) provides:  "A partner shall discharge the duties to the

26  partnership and the other partners under this Chapter and under the partnership

27  agreement and exercise any rights consistently with the obligations of good faith and

28  fair dealing."  PDC could not have in good faith spent any of the partnerships' funds

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010                                    - 14 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

1  to drill new wells after 2006 given the promises and commitments made to

2  investors.  If PDC had wanted to raise funds for new wells in 2010 or 2011, it could

3  have formed new partnerships, borrowed money itself, formed a joint venture, etc.

4  What it absolutely could not do was take money from 2002 through 2005

5  partnerships to finance any such new drilling efforts.

6  Accordingly, PDC requests that partial summary judgment be entered that in

7  or after 2006, PDC had no right (and certainly no duty) to drill new wells of any

8  kind for the Partnerships.  PDC did not breach its fiduciary duties by not doing that

9  which it promised not to do.

10  **2.     PDC Had No Right to Borrow Or Raise New Funds On**

11  **Behalf Of The Partnerships**

12  Leveraged investments sometimes lose substantial value.  PDC repeatedly

13  promised investors that the Partnerships would not borrow (with the exception of the

14  Rockies Region Partnership).  There would be no leverage here.[8]  The Prospectus

15  was explicit:  "The partnership may not borrow funds, even if needed for partnership

16  operations."  Stump Decl. Ex. 1 at 12.  The partnership agreement at Section 6.03(a)

17  provided, in a section with the heading "Certain Restrictions on Managing General

18  Partner's Power and Authority," that PDC shall not "[b]orrow any money in the

19  name or on behalf of the Partnership."  Stump Decl. Ex. 4 at 684-685.

20  Notwithstanding these promises, Plaintiffs allege "the Partnerships could, in fact,

21  have borrowed or raised funds to enable further exploitation of the interests owned

22  by the Partnerships."  FAC ¶ 54.  Plaintiffs' expert Moritz concedes that PDC did

23  not have the right to borrow, admitting that an amendment to the partnership

24  _____

25  [8] Named Plaintiff Schulein's financial advisor Leonard Berard testified that

26  PDC's "no borrowing" promise was important and he would not have had Schulein invest if it weren't there. Berard testified, "[W]e all experienced what happened in 2008 in the financial meltdown and to a great extent that was due to being

27  overleveraged." Borrowing was "additional risk that he wasn't prepared to put upon

28  my clients."  Roth Decl. Ex. 13 at 118.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010

- 15 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

Case 1:17-cv-03079-RBJ   Document 14-3   Filed 02/22/18   USDC Colorado   Page 21 of 30
Case 8:11-cv-01891-AG-AN   Document 122-1   Filed 03/24/14   Page 21 of 30   Page ID
#:8831

agreements would have been required.  Roth Decl. Ex. 18 at 237.  Plaintiffs' expert Huddleson admitted that the pursuit of financing alternatives might have required a vote of the limited partners.  Roth Decl. Ex. 19 at 240.

In addition to the ban on borrowing, Section 6.03(c) of the partnership agreement identified what PDC could not do without a vote of a majority of the limited partners.  This was an intentional effort to restrict the general partner's range of options and limit the business of the Partnership to what had been promised to prospective investors.  Section 6.03(c) provided that PDC could not "sell all or substantially all of the [partnership's] assets" or "do any other act which would make it impossible to carry on the ordinary business of the Partnership." Stump Decl. Ex. 4 at 685 (§6.03(c)(i) and (iii)).  As explained above, the ordinary business of the Partnership by Year Five was producing oil and gas from existing wells, not embarking on new projects.  Consistent with the obligation of good faith and fair dealing in Section 47B-4-4, PDC was to discharge its duties consistent with the structure of Partnerships and their stated business strategy.  That did not include borrowing or creative capital raising activities for the Partnerships to engage in new drilling projects.  Indeed, Section 6.03(e) barred PDC from binding or obligating the Partnership with respect to any matter outside the scope of the Partnership business, which, by 2010 and 2011, was operating existing wells, not drilling new ones.

Accordingly, PDC requests that partial summary judgment be entered that, PDC had no right (and no duty) to borrow money or otherwise raise funds for the Partnerships, except that for the Rockies Region Partnership borrowing was permitted.  PDC did not breach its fiduciary duty by not borrowing when it had promised not to borrow.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010

- 16 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

### 3.   PDC Did Not Have A Duty To Amend The Partnership Agreements And Did Not Have A Duty To Attempt To Negotiate All Imaginable Transactions

PDC formed a four-person Special Transaction Committee ("Committee") to consider transactions relating to the Partnerships, and that Committee approved the amounts offered to buy out the Plaintiffs.  Whatever arguments Plaintiffs may make about the Committee's work, at least two are wholly without legal merit.

First, there was no fiduciary duty to consider amendments to the structure of the partnership agreement.  For example, there was no duty to consider amending the partnership agreement to allow for the drilling of new wells or for the borrowing of funds.  The Committee and PDC had no duty to brainstorm any and all modifications to the agreement that could be dreamed up.  Such a duty would make the contract meaningless and put unbridled responsibilities on fiduciaries.  Section 47B-1-3(a) provides that "relations among the partners and between the partners and the partnership are governed by the partnership agreement" except for the duties of loyalty and care.  W. Va. Code § 47B (2013).  Section 47B-4-4(a) provides that the "only fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care set forth in [other] subsections . . . ."  Those duties do not include a duty to consider amendments to the basic structure of the agreements.  Certainly in this case there can be no duty to consider amendments where tax considerations were paramount and the tax opinion given to thousands of investors was based on the understanding that the Partnerships would "at all times" be operated in accordance with the partnership agreements and the prospectus.  Stump Decl. Ex. 1 at 184.[9]

_____

[9] That PDC did propose an amendment to buy out interests and end the Partnership does not change the analysis.  Certainly a general partner always has a right, usually subject to a vote, to change an agreement.  But that is far different from imposing an open-ended duty to consider alternatives that violate the letter and spirit of a partnership agreement.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010

- 17 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

Case 1:17-cv-03079-RBJ   Document 14-3   Filed 02/22/18   USDC Colorado   Page 23 of 30
Case 8:11-cv-01891-AG-AN   Document 122-1   Filed 03/24/14   Page 23 of 30   Page ID
#:8833

1    Second, there was no duty to negotiate all imaginable forms of oil and gas

2  transactions with hypothetical third parties.  It was permissible for the Committee

3  and PDC to conclude that PDC's offer would be proposed to the then-limited

4  partners for a vote even though PDC was the general partner.  Section 47B-4-4(e)

5  provides that a partner "does not violate a duty or obligation under this chapter or

6  under the partnership agreement merely because the partner's conduct furthers the

7  partner's own interest."  This recognizes that in a partnership, it is often the case that

8  one partner wants to buy out another partner, and that is permissible.  In *Welch v.*

9  *Via Christi Health Partners, Inc.*, 281 Kan. 732 (2006), limited partners sued the

10  general partner alleging breach of fiduciary duty in the buyout of interests in a

11  medical imaging business.  Kansas partnership law, like West Virginia's, is based on

12  RUPA.  The Kansas court noted, "a partner as such is not a trustee and is not held to

13  the same standards as a trustee," distinguishing a partner from a member of a board

14  of directors.  *Id.* at 760.   Siding with the defendant general partner, the Kansas court

15  concluded that in the absence of fraud, misrepresentation, or misconduct, summary

16  judgment of no breach of fiduciary duty by the general partner would be affirmed.

17  *Id.* at 768-769.  Here Plaintiffs disclaim and disavow any suggestion that PDC

18  engaged in fraud.  Similarly, in *Opus Corp. v. IBM*, 141 F.3d 1261 (8th Cir. 1998)

19  an appellate court affirmed the entry of summary judgment in favor of a defendant

20  general partner in an interested party transaction, rejecting arguments that there was

21  self-dealing by the general partner.

22    PDC requests that partial summary judgment be entered that PDC (and the

23  Committee) had no duty to consider amendments to the partnership agreement in

24  this case and no duty in this case to negotiate all imaginable alternative transactions

25  with hypothetical third parties.

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010

- 18 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

Case 1:17-cv-03079-RBJ   Document 14-3   Filed 02/22/18   USDC Colorado   Page 24 of 30
Case 8:11-cv-01891-AG-AN   Document 122-1   Filed 03/24/14   Page 24 of 30   Page ID
#:8834

**C.     FULL SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS**
**SHOULD BE ENTERED ON THE SECTION 14(a) CLAIM**

In their complaint, Plaintiffs "expressly disclaim[ed] and disavow[ed] . . . any allegation . . . that could be construed as fraud."  FAC ¶ 70.  Whether *scienter* is required in post-merger Section 14(a) cases has not yet been decided by the Supreme Court.  It has twice been expressly "reserved" by the Court.  *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1090 n. 5 (1991).  When the Supreme Court decides the question, it should follow the case law in the Section 10(b)(5) context and hold that *scienter* is an element of the claim.  That is because Section 14(a) is meant to promote full and fair proxy disclosures before a vote is held.  *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 377 (1970).  It makes sense, therefore, to limit post-merger claims, as Section 10(b)(5) claims are limited, to situations where there is *scienter*.[10]

**D.     ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT IN**
**FAVOR OF DEFENDANTS SHOULD BE ENTERED ON THE**
**SECTION 14(a) CLAIM**

To prevail on a Section 14(a) claim, Plaintiffs must prove: "(1) defendants made a material misrepresentation or omission in a proxy statement; (2) with the requisite state of mind; and (3) that the proxy statement was the transactional cause of harm of which plaintiff complains."  *In re Zoran Corp. Derivative Lit.*, 511 F. Supp. 2d 986, 1015 (N.D. Cal. 2007) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 384 (1970).  "An omitted fact is material if there is a substantial likelihood

---

[10] Investors should be encouraged to raise their concerns before the vote, not after.  Here some of the named Plaintiffs had financial advisors that they discussed their vote with in advance of the vote and claim they had pre-vote concerns about the methodology but chose not to raise them.  Roth Decl. Ex. 8 at 72-73; Roth Decl. Ex. 9 at 80; Roth Decl. Ex. 10 at 90; Roth Decl. Ex. 11 at 99.   This is a real world example of the problems caused by investors who choose to let the transaction go forward and, only after they see how it works out, raise their concerns.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

2991010                                    - 19 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

1    that a reasonable [voter] would consider it important in deciding how to vote." *TSC*

2    *Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

3              **1.**    **PDC's Disclosure Relating To Discount Rates Is Not**

4                      **Actionable**

5        PDC's disclosure concerning the discount rates used to value the partnerships'

6    assets, and the disclosure of the rate it did not use, is undisputed.  The proxies state:

> 7    PDC used discount rates of 15% for proved developed producing
> 8    reserves and 25% for proved developed non-producing reserves to
> determine the present value of estimated future net cash flows from the
> partnership's reserves.  PDC believes that these discount rates are
> 9    within the range of discount rates commonly used in the oil and gas
> industry in property acquisitions of producing properties, although they
> 10    are higher than the 10% rate that the SEC requires for comparative
> purposes in the year-end reports of publicly traded oil and gas
> 11    companies.

12    Stump Decl. Ex. 16 at 1351.  Plaintiffs contend that PDC should have applied a 10%

13    discount and that the 15% and 25% rates that were applied were not "within the

14    range . . . commonly used in the oil and gas industry . . . ."  Roth Decl. Ex. 17

15    (Supplemental Response to Interrogatory No. 4).  While Plaintiffs believe that PDC

16    should have used a lower discount rate (a change that would have increased the

17    offer), Plaintiffs cannot dispute that PDC accurately disclosed the rates it did use.

18    Nor can Plaintiffs dispute that PDC also provided investors with information as to

19    the uniform rate the SEC requires all public companies to use in public disclosures

20    for purposes of comparisons between companies.  This combined disclosure is not

21    actionable absent something more.  *See, e.g.*, *In re Plains Exploration & Prod. Co.*

22    *Stockholder Litig.*, 2013 WL 1909124 at *9 (Del. Ch. May 9, 2013) ("Having been

23    provided the rates used [in a valuation], stockholders can judge for themselves

24    whether the discount rate was appropriate").  Based on the testimony of Lance

25    Lauck and Kevin Rathke of PDC (Lauck Decl. ¶¶ 3-10; Roth Decl. Ex. 3 at 27, 51-

26    52, 56; Roth Decl. Ex. 4 at 38-39), PDC believed the rates it used (and it accurately

27    disclosed) were appropriate and were "within the range . . . commonly used in the

28    oil and gas industry . . . ."  Roth Decl. Ex. 17 (Supplemental Response to

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010

- 20 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

Case 1:17-cv-03079-RBJ   Document 14-3   Filed 02/22/18   USDC Colorado   Page 26 of 30
Case 8:11-cv-01891-AG-AN   Document 122-1   Filed 03/24/14   Page 26 of 30   Page ID
#:8836

1  Interrogatory No. 4); *Abrahamson v. W. Sav. & Loan Ass'n*, 1991 WL 266782 at *2,

2  951 F.2d 358 (9th Cir. 1991) [("[K]nowingly false statements of reasons, opinion or

3  belief in a proxy statement may be actionable under section 14(a) . . . but only where

4  the statement is one that the directors who made it did not believe . . . .") (citing

5  *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991)).  Moreover, those

6  rates were, in fact, "within the range . . . commonly used in the oil and gas industry"

7  based on a 2010 survey conducted by the Society of Petroleum Evaluation

8  Engineers which showed the discount rates used to be within the industry range.

9  Lauck Decl. ¶¶ 8-10; Ex. 1 at 40.

10         **2.      PDC's Omission of a Disclosure On "Probable" And**

11              **"Possible" Reserves Is Not Actionable**

12         The oil and gas industry and the SEC recognize three categories of reserves,

13  in declining order of probability of recovery: proved, probable, and possible.  17

14  C.F.R. § 210.4-10(a)(17-18, 22).  Before March 1982, SEC Regulation S-K

15  prohibited the disclosure of "probable" and "possible" reserves in SEC filings

16  because they "are not sufficiently reliable to be included in any publicly filed

17  document and disclosure of this information may be misleading to investors."  *See*

18  Securities Act Release No. 6008, 1978 WL 195742 at *12, reprinted in [1978

19  Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 81,768, at 81,104 (Dec. 19, 1978).  The

20  March 1982 revision allowed companies to disclose such information in certain

21  circumstances but did not require such disclosure.  *See* Securities Act Release No.

22  6383, 1982 WL 90370 at *51, reprinted in [1937-1982 Accounting Series Release

23  Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 72,328, at 63,003 (March 3, 1982).

24         As a matter of law, there is no obligation to disclose values for "probable" and

25  "possible" reserves.  In *Starkman v. Marathon Oil Co.*, 772 F.2d 231, 242 (6th Cir.

26  1985) *abrogated on other grounds by Basic Inc. v. Levinson*, 485 U.S. 224 (1988),

27  the court held that "Marathon plainly had no duty to disclose [reports that] contained

28  estimates of the value of probable, potential and unexplored oil and gas reserves

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010                                        - 21 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

Case 1:17-cv-03079-RBJ  Document 14-3  Filed 02/22/18  USDC Colorado  Page 27 of 30
Case 8:11-cv-01891-AG-AN  Document 122-1  Filed 03/24/14  Page 27 of 30  Page ID
#:8837

1   which were based on highly speculative assumptions regarding the path of oil and

2   gas prices, recovery rates and the like over a period of thirty to fifty years.

3   Disclosure of such estimated values could well have been misleading without an

4   accompanying mountain of data and explanations. There is no reported case actually

5   holding that disclosure of appraised values of oil and gas reserves is required, and

6   several which agree with our decision that such disclosure is not required."

7        Similarly, *Lane v. Page*, 649 F. Supp. 2d 1256, 1294 (D.N.M. 2009)

8   dismissed a Section 14(a) claim based on nondisclosure in a proxy of information

9   that a property "might contain 100 to 500 million barrels of oil." *Id.* at 1293.  The

10  court reasoned that even if the disclosure was not prohibited (which may have been

11  the case), "SEC regulations indicate that companies should not lightly disclose

12  reserve estimates." *Id.* at 1294; *see also Rice v. Hamilton Oil Corp.*, 658 F. Supp.

13  446, 448 (D. Colo. 1987) ("Tender offer materials must disclose 'soft' information

14  such as appraisals, estimates and forecasts with respect to oil and gas discoveries

15  only if there is a substantial certainty that these estimates will increase 'proved'

16  reserves. . . . Indeed, the Tenth Circuit . . . has noted that '[a]ny statement

17  concerning 'oil reserves' other than in the category of 'proved' could certainly be

18  misleading to any investor other than one who is an expert in the industry.'") (citing

19  *Sunray DX Oil Co. v. Helmerich & Payne, Inc.*, 398 F.2d 447, 451 (10th Cir.1968)).

20       Partial summary judgment should be granted that omission of probable and

21  possible reserves from the proxies is not actionable.

22      **3.**    **PDC's Disclosures Relating To The Special Transactions**

23         **Committee And Alternatives Are Not Actionable**

24       A plaintiff can always review a proxy and allege that something is missing.

25  But the law wisely recognizes that finding something missing is not the test.  *See*

26  *Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)

27  (complete disclosure not required).  There was no obligation for PDC to present a

28  laundry list of every possible alternative that was considered or that could have been

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010                                    - 22 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

Case 1:17-cv-03079-RBJ Document 14-3 Filed 02/22/18 USDC Colorado Page 28 of 30
Case 8:11-cv-01891-AG-AN Document 122-1 Filed 03/24/14 Page 28 of 30 Page ID
#:8838

1  considered by the Committee. *See Umbriac v. Kaiser*, 467 F. Supp. 548, 553 (D.

2  Nev. 1979) ("[M]anagement is not required to discuss the panoply of possible

3  alternatives to the course of action it is proposing, absent perhaps some suggestion

4  that the route not chosen was so well recognized and legally sound that the failure to

5  pursue it demands consideration. . . ."); *see also Allen v. Penn Cent. Co.*, 350 F.

6  Supp. 697, 703 (E.D. Pa. 1972) ("Drafters of proxy statements have no obligation to

7  discuss every conceivable alternative to the course of action for which management

8  seeks shareholder approval. 'Theoretically the number of alternatives to any

9  [proposal] is infinite. To drench the shareholder with a flood of information may

10  defeat the very purpose of [Rule 14a-9].'").  There is no dispute about the

11  disclosures related to the Committee's work in the proxy and alternatives considered

12  and no dispute about the minutes of the Committee's meetings. Roth Decl. Ex. 2 at

13  19.  Further, Committee Chairman Swoveland testified about what was and was not

14  considered and why.  Roth Decl. Ex. 1 at 8-14.  Under applicable law cited above,

15  the disclosures in proxy were more than adequate; there was no obligation to dream

16  up and disclose fanciful alternatives that hypothetically could have been considered.

17  A proxy statement is a disclosure document, not a creative writing exercise.

18      Partial summary judgment should be entered that the proxies adequately

19  disclosed the work of the Committee and the alternatives it considered.  There was

20  no requirement that all imaginable alternatives be disclosed.

21      **E.      THE LEGAL ISSUE OF WHAT THE PARTNERSHIPS OWNED**

22          **SHOULD BE SUMMARILY ADJUDICATED: THE**

23          **PARTNERSHIPS OWNED WELLBORES, NOT LAND**

24      The Partnerships owned wellbores, not acreage.  A "Prospect," as defined in

25  the partnership agreements, is generally an area in which the partnership owns or

26  intends to own one or more oil and gas interests defined by PDC and reasonably

27  anticipated to contain at least one oil and gas reservoir.  The area was to "be

28  designated by [PDC] in writing prior to the conduct of program operations[.]"

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010

- 23 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

1   Stump Decl. Ex. 4 at 663-664 (§1.08(tt)).  PDC supplied that writing for each

2   partnership in the form of assignments of working interests, which were publicly

3   filed and also attached to Partnership 10-Ks.  Stump Decl. ¶ 51; Roth Decl. Ex. 14.

4           The assignments define the 'Partnerships' ownership interest.  They provide

5   that the Partnerships received:

6           The specific undivided interest shown in [this assignment] in respect of
        each of the oil and gas leases shown in Exhibit A, but **only to the**
7       **extent such leases cover lands and depths necessary for production**
        **of the specific oil and gas well identified in [this assignment].  This**
8       **is intended to be a 'wellbore assignment.'**  Assignee shall be entitled
        to receive that share of production **from the well identified** in [this
9       assignment] which is attributable to the undivided interest here being
        assigned, but the **Assignee shall have, as a result of this assignment,**
10      **no interest whatsoever in any other oil and gas well, whether now**
        **existing or hereafter drilled**, which may be located on the lands
11      described in [this assignment] or on any land pooled therewith.
        **Assignor [PDC] expressly excepts from this assignment and**
12      **reserves to itself**, its successors and assigns, the remainder of the lease
        and the leasehold oil and gas estate, including (without limitation) **the**
13      **right to produce other wells which are or may be located on the**
        **lands described in [this assignment] and lands pooled therewith,**
14      **without the obligation to account to Assignee for any such other**
        **production**.

15
    Roth Decl. Ex. 14 at 120 (emphasis added).  Accordingly, the partnerships held an
16
    interest in a specific set of wells.  All other rights connected to the leases on which
17
    those wells were drilled remained with PDC, consistent with PDC's promise to "not
18
    drill any wells beyond the initial wells."  What the Partnerships owned is a legal
19
    question that the Court can resolve now.  That PDC offered the limited partners
20
    $10,000 per drilling location in the buybacks does not change the language of the
21
    controlling documents.  There are a host of reasons for PDC's valuation decisions.
22
    The assignments describe what the Partnerships owned, as was agreed upon in the
23
    partnership agreements.  Therefore, PDC requests that summary judgment be
24
    entered that the assignments define the Partnerships' ownership interests and that the
25
    Partnerships owned wellbores only.
26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010                                    - 24 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANx)

Case 1:17-cv-03079-RBJ   Document 14-3   Filed 02/22/18   USDC Colorado   Page 30 of 30
Case 8:11-cv-01891-AG-AN   Document 122-1   Filed 03/24/14   Page 30 of 30   Page ID
#:8840

**F.    SUMMARY JUDGMENT SHOULD BE ENTERED IN DEFENDANTS' FAVOR ON THE CLAIM FOR PUNITIVE DAMAGES**

No punitive damages are available under Section 14(a).  *Gould v. Am.-Hawaiian S.S. Co.*, 535 F.2d 761, 781 (3d Cir. 1976).  Thus Plaintiffs can only seek punitive damages in connection with the state law breach of fiduciary duty claim, but such claims are often considered equitable, and may be considered equitable here.  In any event, in their complaint Plaintiffs "expressly disclaim and disavow . . . any allegation . . . that could be construed as alleging fraud." FAC ¶ 70.  Before punitive damages may be awarded, a plaintiff must have clear and convincing evidence of wrongdoing, *Ittella Foods, Inc. v. Zurich Ins. Co.*, 98 F. App'x 689, 690 (9th Cir. 2004), and "to defeat a summary judgment motion, [a] [p]laintiff must produce evidence such that a reasonable juror could find punitive damages appropriate by clear and convincing evidence," *Hubka v. Paul Revere Life Ins. Co.*, 215 F.Supp.2d 1089, 1094 (S.D.Cal.2002).  There is no such evidence in this case.  Summary judgment to eliminate the punitive damages claim should be granted.  *See Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co of Pittsburgh*, 64 F.3d 1282, 1290 (9th Cir. 1995) (affirming summary judgment dismissing punitive damages claim).

## VI.  CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion.


Dated: March 24, 2014                      IRELL & MANELLA LLP
                                           David Siegel
                                           Bruce A. Wessel
                                           Melissa R. McCormick
                                           Charles Elder



                                           By: _/s/ David Siegel_____
                                               David Siegel
                                               Attorneys for Defendants & Counter
                                               Claimant

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2991010                                    - 25 -

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT
CASE NO. SACV 11-1891 AG (ANX)