THOMAS G. FOLEY, JR. (65812)
tfoley@foleybezek.com
FOLEY BEZEK BEHLE & CURTIS LLP
15 West Carrillo Street
Santa Barbara, CA  93101
Telephone: (805) 962-9495
Fax: (805) 962-0722

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF COLORADO

| | |
|---|---|
| CHRISTOPHER J. RODENFELS, as Trustee of the Christopher J. Rodenfels 2000 Revocable Trust established May 10, 2000; | Case No. |
| | **COMPLAINT FOR BREACH OF FIDUCIARY DUTY** |
| *Plaintiff*, | |
| vs. | |
| PDC ENERGY (fka PETROLEUM DEVELOPMENT CORPORATION), a Delaware corporation, | |
| *Defendant*. | |

COMPLAINT FOR VIOLATION OF BREACH OF FIDUCIARY DUTY

## NATURE OF THE ACTION

1.      This is an action brought on behalf of Plaintiff Christopher J. Rodenfels in his capacity as the Trustee of the Christopher J. Rodenfels 2000 Revocable Trust established May 10, 2000 ("Plaintiff" or "Trust"), which owned limited partnership units in four related limited partnerships (collectively, the "Partnerships") formed by Defendant Petroleum Development Corporation (now doing business as PDC Energy) ("PDC"), which were acquired by PDC by means of mergers effectuated by the use of virtually identical proxy statements issued to the limited partners.[1] The mergers cashed out the Trust over its objections as a limited partner in the four Partnerships at grossly unfair prices and thereby enriched PDC at the Trusts' expense. Defendant PDC is a domestic independent natural gas and crude oil company.  PDC owns, operates, and manages natural gas and crude oil properties located predominantly in Colorado (the Denver-Julesburg (D-J) and Piceance Basins), Texas (the Permian Basin), and West Virginia (the Appalachian Basin). Over a period of several years, PDC formed numerous limited partnerships to raise funds to finance the acquisition and development of oil and gas properties, and attracted thousands of investors who paid hundreds of millions of dollars for their limited partnership interests. After raising these funds from investors, which enabled PDC to acquire and develop these properties, PDC decided to acquire all of the partnerships' assets for itself and to do so at unfairly low prices. To that end, PDC conceived and implemented a common scheme and plan to purchase (through a cash-out merger transaction) the Partnerships in which the Trust was a limited partner by the end of 2012. PDC carried out this plan by disseminating virtually identical proxy statements, which proposed that the Partnerships merge with one of

---

[1] The Partnerships at issue were known as, (1) PDC 2004-D Limited Partnership, (2) PDC 2005-A Limited Partnership, (3) PDC 2005-B Limited Partnership, and (4) Rockies Region Private Limited Partnership, hereinafter collectively referred to as the "Partnerships".

COMPLAINT FOR BREACH OF FIDUCIARY DUTY

PDC's wholly-owned subsidiaries: DP 2004 Merger Sub LLC ("Merger Sub"). The proposed merger, which PDC encouraged Plaintiff and the other limited partners to vote in favor of, allowed PDC to acquire all of the assets and the interests of the limited partners.

2.    The four Partnerships at issue in this action were formed by PDC to obtain financing for oil and gas exploration and development in both the D-J and Piceance Basins. The interests the Partnerships owned in those oil and gas properties are very valuable -- the D-J Basin includes the Wattenberg Field. According to PDC, the Wattenberg Field, which includes the Niobrara formation, is PDC's "chief growth driver" in the Rocky Mountain Region, and is one of PDC's "most prized assets." PDC has recently described the wells drilled in this field to be "very economic." The Piceance Basin fields are also deemed by PDC to be among its important "core" assets.

3.    Other oil and gas companies are also exploiting the Wattenberg Field. On November 16, 2011, the Wall Street Journal reported that Anadarko Petroleum Corp. announced that the minerals it controls in the Wattenberg Field may hold more than a billion barrels of recoverable oil and natural gas. The Wall Street Journal said the "disclosure could vault Colorado's Wattenberg Field into the ranks of major oil developments in the United States, joining the Bakken Shale in North Dakota and the Eagle Ford in South Texas." Anadarko said "it expects its production from the region to grow at a compound annual rate of 20% between 2010 and 2012," and that its wells will ultimately yield between 500 million and 1.5 billion barrels of oil, natural gas liquids and natural gas. The Wall Street Journal noted that "Only a handful of billion-barrel fields have ever been found in the U.S."

4.    Because the Partnerships' limited partnership units were registered with the Securities Exchange Commission ("SEC") pursuant to Section 12 of the Securities Exchange Act of 1934 (the "1934 Act"), PDC could accomplish this acquisition only by soliciting the votes of the limited partnerships through proxy

COMPLAINT FOR BREACH OF FIDUCIARY DUTY

statements that complied in every respect with Section 14 of the 1934 Act and the SEC Rules and Regulations promulgated thereunder. PDC accordingly prepared and issued proxy statements to the Trust regarding PDC's intent to acquire the assets of the Partnerships. Those proxy statements, which are virtually identical in content, contained materially false and misleading statements and omitted to state material facts relating to the value of the assets of the Partnerships and the units held by the limited partners. The proxy materials portrayed the value of the partnerships' units to be, under most measures, less than what would be paid to limited partners upon consummation of the mergers.

5. As the sole managing general partner of each of the Partnerships, PDC had a fiduciary obligation to deal fairly with the limited partners, including the Trust, and to fully and fairly disclose to them all material information known by PDC about the value of the Partnerships' assets. In spite of these fiduciary obligations, PDC failed to disclose material information about the true value of the Partnerships' assets and took advantage of the Trust as a limited partner so that it could buy the Trusts' interests at grossly unfair prices.

## JURISDICTION AND VENUE

6. All four Partnerships were formed under West Virginia law. The claims asserted herein arise under West Virginia state law for breach of fiduciary duty. Jurisdiction is conferred by 28 U.S.C. §§ 1332.

## THE PARTIES

7. Plaintiff Christopher J. Rodenfels, as Trustee of the Christopher J. Rodenfels 2000 Revocable Trust established May 10, 2000, is a resident of Henderson, Nevada. The Trust was a limited partner in PDC 2004-D Limited Partnership, PDC 2005-A Limited Partnership, PDC 2005-B Limited Partnership, and Rockies Region Private Limited Partnership.

COMPLAINT FOR BREACH OF FIDUCIARY DUTY

8.    Defendant PDC is a corporation organized under the laws of the State of Delaware, with its principal executive offices located at 1775 Sherman Street, Suite 3000, Denver, Colorado 80203. PDC is an independent natural gas and crude oil company engaged in the exploration for and the acquisition, development, production, and marketing of natural gas, natural gas liquids, and crude oil.

9.    Mr. Rodenfels was a named plaintiff, and PDC was a named Defendant in a class action case filed in the United States District Court for the Central District of California: *Jeffrey Schulein, et al. v. Petroleum Development Corporation, et al.*, Case No. 8:11-cv-01891-AG-AN ("Schulein Action"). Judge Andrew J. Guilford certified the Schulein Action as a class action. The Schulein Action was settled by PDC agreeing to pay the class $37,000,000.00 (the "Class Settlement").

10.    Mr. Rodenfels exercised the Trust's right to opt out of the Class Settlement. It is Mr. Rodenfels' positon that the Trust is entitled to pursue its individual claims against PDC in the Schulein Action. PDC's position is that the Trust is not entitled to pursue its individual claims in the Schulein Action, and that the Trust must file a new complaint against PDC. Mr. Rodenfels has filed a motion in the Schulein Action, to have the Court determine whether it may continue to pursue its individual claims in that litigation, which motion has not yet been ruled upon by the Court. Because of pending statutes of limitation, the Trust is filing this complaint against PDC in the District of Colorado so that its claims against PDC are not time barred if the Court in the Schulein Action determines that the Trust cannot pursue its individual claims in the Schulein Action. Should the Court in the Schulein Action rule that the Trust may pursue its claims against PDC in that litigation, then this complaint will be dismissed without prejudice.

///

///

///

COMPLAINT FOR BREACH OF FIDUCIARY DUTY

**DEFENDANT'S' WRONGFUL COURSE OF CONDUCT**

11.     On January 6, 2004, PDC issued a prospectus as part of its "PDC 2004-2006 Drilling Program." Under this program, up to twelve limited partnerships would be formed by PDC, as the managing general partner, which PDC would use to obtain financing from investors to acquire lease rights, drill, own, and operate natural gas and oil wells in Colorado, Michigan, North Dakota, Alabama, West Virginia, Pennsylvania, Utah, and other states.

12.     PDC represented in the prospectuses for the PDC 2004-D Limited Partnership, PDC 2005-A Limited Partnership, and the PDC 2005-B Limited Partnerships, *inter alia*, the following:

>    a. "In the future we may wish to rework or recomplete partnership wells and we will not hold money from the initial investment for that future work. Additionally, the limited partnership agreement does not permit the partnership to borrow funds on behalf of the partnership or for partnership activities. As a result, the partnership may have to retain revenue from its operations to pay for these development costs and, by doing so, would reduce the amount of cash distributions to the investors."

>    b. "We intend to develop a particular partnership's interests in its prospects only with the proceeds of subscriptions and our capital contributions.

Between January 6, 2004 and December 6, 2005, PDC formed the four Partnerships at issue in this action: (1) 2004-D Limited Partnership, formed on July 28, 2004; (2) PDC 2005-A Limited Partnership, formed on November 30, 2004; (3) PDC 2005-B Limited Partnership, formed on February 8, 2005; and (4) Rockies Region Private Limited Partnership, formed on December 6, 2005.

13.     PDC served as the sole managing general partner of each of the Partnerships and exercised full and exclusive control over all of the activities of each of the Partnerships. Because it was the managing general partner of each of the

COMPLAINT FOR BREACH OF FIDUCIARY DUTY

four partnerships, PDC owed a fiduciary duty to the Trust as a limited partner in each of the four partnerships.

14.    Subsequently, PDC acquired the rights to explore and develop various oil and gas fields and transferred those rights to the Partnerships, as it represented it would do in the prospectuses for each of the Partnerships. By creating these Partnerships, and attracting investors to become limited partners, PDC was able to raise sufficient capital to conduct exploration and drilling operations in these fields. The Partnerships utilized the contributed capital to acquire and develop leaseholds in the Wattenberg Field and other areas of Colorado. Those mineral rights included the right to drill wells to extract oil and gas from the Niobrara formation and other oil and gas producing zones contained within the Wattenberg Field and the Piceance field.

15.    Each of the Partnerships acquired interests in, *inter alia*, leaseholds, oil and gas reserves, accounts receivables, infrastructure to extract and transport oil and gas, oil stored in tanks, which had not yet been sold, and cash.

16.    The limited partners, including the Trust, received cash distributions based on the production from the leaseholds and interests owned by each Partnership. PDC represented to the limited partners that they would receive these distributions so long as revenue from the wells exceeded the expenses incurred during drilling. PDC also represented that most successful wells continue to produce for twenty years or more. Section 3.02, subsection (a) of each of the partnership agreements stipulated that, as the managing partner, PDC retained 20% (30% in the case of Rockies Region Private Limited Partnership) of the profits earned from the sale of natural gas and oil produced from each Partnership's wells.

17.    Because of PDC's full and exclusive control over the activities of each Partnership, the partnership agreements established that PDC, as the sole managing general partner, owed a fiduciary responsibility to each Partnership and the limited partners. Subsection (n) of section 5.02 (in the case of the  PDC 2004-D Limited

7

COMPLAINT FOR BREACH OF FIDUCIARY DUTY

Partnership, subsection (o) of section 5.02) of each of the partnership agreements, entitled "Conduct of Operations," states:

> The Managing General Partner shall have a fiduciary responsibility for the safekeeping and use of all funds and assets of the Partnership, whether or not in the Managing General Partner's possession or control, and shall not employ or permit another to employ such funds or assets in any manner except for the exclusive benefit of the Partnership.

18. Subsection (b) of Section 5.02 (in the case of the PDC 2004-D Limited Partnership, subsection (c) of Section 5.02) of each of the partnership agreements states:

> All transactions between the Partnership and the Managing General Partner or its Affiliates shall be on terms no less favorable than those terms which could be obtained between the Partnership and independent third parties dealing at arm's-length, subject to the provisions of Section 5.07 hereof.

19. Section 5.07, subsection (k), of each of the partnership agreements, prohibits PDC, as the managing general partner, along with any of its affiliates, from purchasing or acquiring any property from the Partnerships, directly or indirectly, unless such a purchase or acquisition is pursuant to a transaction that is fair and reasonable to the limited partners, subject to the following conditions:

> A sale, transfer or conveyance, including a farmout, of an undeveloped property from the Partnership to the Managing General Partner or an Affiliate, other than an affiliated program, must be made at the higher of cost or fair market value.

20. Section 7.08, subsection (d), of each of the partnership agreements, provided that the agreement could be amended by a majority of the limited partners entitled to vote based on their ownership of then-outstanding partnership units.

21. Each Partnership possessed the right to further develop its assets. Such development included the right of the Partnerships to utilize hydro-fracturing to further develop its existing wells to increase the amount of oil and gas that could

8

COMPLAINT FOR BREACH OF FIDUCIARY DUTY

be extracted. The Partnerships also possessed the right to develop new, vertical "infill" wells based on a change in local regulations that allowed additional wells to be drilled in the Wattenberg Field. The Partnerships also possessed the right to develop horizontal wells in the Niobrara formation in the Wattenberg Field. PDC knew at the time the proxies in question were solicited that infill wells and horizontal wells would substantially increase the volume of oil and gas that each Partnership could produce.

22.    In October 2010, PDC issued proxy statements to the limited partners in the 2004 Partnerships (PDC 2004-D Limited Partnership). In the proxy statement, PDC stated that it had decided to buy out the limited partners because its corporate strategy had "changed" since it initially formed the Partnerships. PDC said:

> Drilling partnerships are not part of PDC's strategic plan going forward, and PDC wishes to buy them back, to the extent feasible. PDC has not established a drilling partnership since 2007 and has publicly announced a fundamental shift in its business strategy away from the partnership model to a more traditional exploration and production company model. In 2008, PDC eliminated from its strategic plan the use of sponsored drilling partnerships as a method of raising capital to fund development of PDC's undeveloped properties due to availability of internally generated cash flow from operations and external borrowing capacity under its line of credit. PDC currently believes these other sources of financing are sufficient to meet its futures capital needs under its strategic plan.  Due to the limited availability of properties and third-party drilling and completion services, PDC believes that this method of financing allows PDC to obtain 100% of the working interest in wells developed, while achieving a higher growth rate for both production and reserves and a better economic return to its shareholders. PDC anticipates that the merger will provide PDC with an immediate increase in its share of the partnership's production and proved reserves since PDC will obtain from the investors the equity of the partnership not currently owned by PDC.  PDC also wishes to position itself as a growth company.  The merger will provide PDC with growth in both production and reserves

COMPLAINT FOR BREACH OF FIDUCIARY DUTY

from assets with which it is very familiar, and will permit PDC to invest further capital in those assets on a timetable of its own choosing.

23.    In February 2011, PDC issued nearly identical proxy statements to the 2005 Partnerships (PDC 2005-A Limited Partnership; PDC 2005-B Limited Partnership; and Rockies Region Private). These statements contained similar statements concerning the change in PDC's corporate strategy away from the limited partnership drilling programs toward "a more traditional exploration and production company model."

24.    Each of the proxy statements issued to the limited partners in October 2010 and February 2011 included a virtually identical proposed merger agreement whereby, upon approval by the limited partners, Merger Sub would merge with each Partnership. Upon completion of the merger, the separate existence of the Partnerships would cease and Merger Sub would survive as each Partnerships' successor-in-interest.

25.    Each of the proxy statements urged the limited partners to vote in favor of the proposed merger and in favor of an amendment to the partnership agreement that would allow a simple majority of the limited partners to be sufficient to approve a merger and eliminate the right of any dissenting limited partner to maintain a continuing interest in the surviving entity of such a merger. PDC urged the limited partners to approve the merger by including a section in each of the proxy statements titled "The Partnership's Reasons for the Merger," which stated that declining natural gas prices along with the prospect of prolonged reductions in cash distributions to all of the limited partners offered compelling reasons for the limited partners to agree to the proposed mergers.

26.    At the time the proxy statements were issued to the limited partners of the Partnerships, PDC had been holding back a certain percentage of the cash distributions owed to the limited partners under each of the partnership agreements. PDC was withholding these funds so it could build a cash reserve for drilling

COMPLAINT FOR BREACH OF FIDUCIARY DUTY

operations that PDC did not plan to conduct on behalf of the Partnerships. This hold back of cash generated by the Partnerships' ownership of oil and gas wells artificially depressed distributions to the limited partners in anticipation of its plan to solicit limited partners to vote in favor of the upcoming mergers. PDC claimed in each of the proxy statements that the revenue from the Partnerships' assets would not be able to support the future development of the Partnerships' assets. As a consequence, PDC asserted that the cash distributions owed to the limited partners would continue to be reduced in order to fund the development of each Partnership's assets. PDC also claimed that it was likely that it would have to continue to withhold these distributions from the limited partners at varying levels up to 100%, and that this could go on for as many as five more years.

27.    The partnership agreements for the four Partnerships at issue in this Complaint expressly permitted PDC as the managing general partner to sell assets belonging to the Partnerships.

28.    PDC acknowledged in each of the proxy statements that both PDC and its Board of Directors had a conflict of interest with the limited partners in connection with the proposed mergers because they owed conflicting fiduciary duties to PDC's shareholders and the limited partners in setting the price to be paid to the limited partners and in structuring the mergers. Because of this conflict, PDC appointed a "special committee" of four non-employee members of its Board of Directors. This committee commissioned a "fairness opinion" and hired an investment banker, Houlihan Lokey, to prepare a written "fairness opinion" that would be disseminated to the limited partners with the proxy statements. Each of the proxy statements included Houlihan Lokey "fairness opinion" which states that the consideration to be received by the limited partners in the proposed merger was "fair to such unaffiliated holders of limited partnership interests from a financial point of view." The "fairness opinion" prepared by Houlihan Lokey states that it reviewed "certain oil and gas reserve reports prepared by the Managing General

COMPLAINT FOR BREACH OF FIDUCIARY DUTY

Partner's independent oil and gas reserve engineers (the "Reserve Reports") containing estimates with respect to the Limited Partnership's oil and gas reserves." Houlihan Lokey goes on to state that "we have not been requested to make, and have not made, any physical inspection or independent appraisal of evaluation of any of the assets, properties, or liabilities of the limited partnership or any other party, nor were we provided with any such appraisals or evaluation, other than the Reserve Reports."

29. In a section titled "Recommendation Regarding the Proposed Merger Transaction," each proxy statement stated that the special committee "encourages [the limited partner] to vote FOR the proposals to approve the amendment and the merger agreement."

30. The partnership agreements allowed for the merger of the drilling partnership with another entity if a majority of the limited partners voted to approve the merger. The partnership agreements further provided that in the event that a merger were approved, any limited partner who voted against the merger was required to be offered a choice between maintaining a continuing ownership interest in the surviving entity or receiving cash in an amount equal to the limited partner's pro rata share of the appraised value of the partnership's net assets. The first step in the ongoing private process was to obtain a vote from the partners eliminating the right to obtain a continuing interest in the surviving entity. The second was to approve the cash out merger transaction. Both steps were accomplished at the same time by means of the same proxy statement for each Partnership.

31. Under applicable SEC regulations and industry practice, two main categories of oil and gas reserves are recognized, namely, proved and unproved. Unproved reserves are further subclassified as probable and possible. Proved reserves, in turn, are subclassified as developed or undeveloped. The estimated value of proved reserves (both developed and undeveloped), as defined by the SEC's rules, is required to be disclosed in financial statements filed with the SEC.

COMPLAINT FOR BREACH OF FIDUCIARY DUTY

32.     In January 2009, the SEC revised its oil and gas reporting requirements, effective January 1, 2010. *See* "Modernization of Oil and Gas Reporting," 74 Fed. Reg. 9 (Jan. 14, 2009). A major change in the revised disclosure rules related to the treatment of probable and possible reserve valuations. Where the previous version of the SEC's rules had allowed oil and gas companies to disclose proved reserves only, the revised rules allowed companies to disclose both probable and possible reserves. *Id.* at 2172. The SEC noted that "numerous oil and gas companies already disclose unproved reserves on their Web sites and in press releases," and that this practice "does not appear to have caused confusion in the market." *Id.* at 2173. In its own financial statements filed with the SEC and other public statements subsequent to January 1, 2010, PDC has disclosed information regarding both its proved and unproved reserves.

33.     In addition to changing the treatment of unproved reserves, the revised SEC rules feature new definitions applicable to prove reserves. Under the revised rules, the focus is on the "final product" of "oil and gas production activities," not on the particulars of the oil extraction technology used. 74 Fed. Reg. 9 at 2163. Further, the revised rules include in their definition of proved undeveloped reserves those reserves that are found in "drilling units" immediately adjacent to units containing producing wells as well as drilling units beyond immediately adjacent drilling units. 74 Fed. Reg. 9 at 2165.[2]

34.     The proxy statements for each of the four partnerships at issue in this litigation set forth valuations for both proved and unproved reserves. For the proved reserves, PDC based its estimate of value on a future production curve consistent with a report from Ryder Scott Company, L.P. ("Ryder Scott") a petroleum engineering consulting firm that valued the reserves as of December 31, 2009, but

---

[2] "A drilling unit refers to the spacing between wells required by some local jurisdictions to prevent wasting resources and optimize recovery." *Id.* at n.104.

COMPLAINT FOR BREACH OF FIDUCIARY DUTY

used more current pricing and higher future net-income discount rates. At the instruction of PDC, Ryder Scott's report did not include any estimate of the value of any unproved reserves. Instead, in the proxy statements for each of the Partnerships, PDC valued all of the Partnerships' unproved reserves at $10,000 per drilling location, with no disclosure as to how it arrived at that valuation. The $10,000 per drilling location value it attributed to unproved reserves only took into account infill wells on Partnership leases, not horizontal wells. Indeed, no value whatsoever was assigned by PDC in the proxy statements to any potential horizontal wells on the Partnerships leases.

35.  These reserve valuations in the proxy statements sent to the limited partners failed to take into account technological developments that PDC itself had publicly touted as likely to give rise to substantially increased revenues: infill drilling and enhanced recovery from horizontal drilling in the Wattenberg Field in Colorado. Since 2009, "infill wells" can be drilled in the same producing formations as a result of a change in Colorado state regulatory requirements that allowed more wells to be drilled on twenty-acre spacing. In addition to "infill wells," PDC also planned to drill horizontal wells into producing formations already developed by the drilling partnerships' vertical wells. PDC, in 2010, had already begun to drill infill wells and horizontal wells, and plans to drill more in the Wattenberg Field in Colorado. PDC reported to the financial press early in 2011 that PDC drilled and completed its first horizontal Niobrara well in the Wattenberg Field in Colorado in the fourth quarter of 2010. PDC reported in 2011 that the well tested a 24-hour peak rate of 625 barrels of oil equivalent per day. PDC also reported it had budgeted a 14-well horizontal Niobrara drilling program in the Wattenberg Field for 2011.

36.  However, if infill wells and the potential for horizontal drilling on Partnership leases in the Wattenberg Field are taken into account, the net present value of the net income to be derived from the partnership's reserves would greatly

exceed the amount the limited partners received when they were cashed out. Taking one of the partnerships, PDC 2004-D, as an exemplar, the limited partners were paid approximately $13.2 million for their limited partnership units. That partnership had 44 vertical wells at the start of 2010. If 32 infill wells and eight Niobrara horizontal wells were included in the estimated value of the assets held by PDC 2004-D, the value of the reserves would be more than $100 million, using the SEC's 10% present value discount rate.[3]

37.    The estimated discounted future net income from the infill wells alone (which are estimated to be worth approximately $40 million) should have been disclosed in the proxy statements. Regardless of whether they were properly characterized as proved or unproved reserves, the estimated value of the reserves accessible by infill wells and by horizontal drilling using assumptions about production, commodity prices and costs that are similar to those that were used to value the proved reserves were known to PDC and should have been disclosed in the proxy statements, and the failure to disclose those values rendered the proxy statements materially false and misleading, which was a breach of PDC's fiduciary duty owed to the limited partners.

38.    Before it solicited the limited partners to vote for the mergers of the four Partnerships at issue in this litigation, PDC began reducing monthly distributions to the limited partners. PDC's stated reason for reducing the distributions was to create a cash reserve to enable each of the Partnerships to further develop its oil and gas reserves. PDC also took the position that unless it

[3] In estimating the value of the proven reserves in the proxy statements, PDC used a 15% net present value discount rate for proved developed reserves and 25% for proved undeveloped reserves, which had the effect of lowering the estimated values of those reserves. Ryder Scott's report of summarized in the proxy statements used a 10% discount rate. Ryder Scott's report for PDC 2004-D showed an estimated value of $8,090,000 for the partnership's proved reserves. As alleged above, Ryder Scott was instructed by PDC not to estimate the value of any unproved reserves.

COMPLAINT FOR BREACH OF FIDUCIARY DUTY

acquired sole ownership of the Partnerships' assets, the Partnerships would have insufficient access to capital, by borrowing or otherwise, to fully develop the properties the Partnerships owned. The reduction in distributions was designed to make continued ownership appear unattractive to the limited partners at a time when they would be voting on PDC's proposal for merging the Partnerships into Merger Sub. Furthermore, and contrary to what was represented in the proxy statements, the Partnerships could, in fact, have borrowed or raised funds to enable further exploitation of the interests owned by the Partnerships, and PDC, as general partner of the Partnerships, could also have sold less productive assets in order to raise funds to further develop their assets in the Wattenberg Field. The partnership agreement for the Rockies Region 2005 limited partnership expressly permitted PDC to borrow funds to develop partnership assets to drill in-fill wells or horizontal wells. Indeed, cash flow analyses in the hands of PDC, but not disclosed to the limited partners, showed that the Partnerships could self-finance the development of their ownership interests in those reserves by withholding significantly less than the entire funds available to distribute to the limited partners. The mergers were approved by a majority of the limited partners of the respective Partnerships at meetings held on December 8, 2010, June 15, 2011, and October 27, 2011. As a result of PDC's false and misleading statements and omissions of material facts in the proxy statements, PDC was able to obtain ownership of all four of the Partnerships' valuable assets by paying grossly unfair prices for the Plaintiff's limited partnership units.

39.    The Ryder Scott report, which was summarized in a letter included with each of the proxy statements, states: "At PDC's request, this report addresses only the proved reserves attributable to the properties evaluated herein."  Thus, Ryder Scott was instructed by PDC to only value each Partnership's "proven" reserves, and the Ryder Scott reports that PDC included in the proxy statements did not account for the value of the Partnerships' interests in the Niobrara formation

COMPLAINT FOR BREACH OF FIDUCIARY DUTY

and their ability to drill infill wells and the increased anticipated cash flow from refracturing each Partnership's existing vertical wells.

40. In Section 2.2 of each merger agreement, PDC offered to purchase the partnership units of the respective limited partners for an amount it unilaterally determined to be fair in violation of its fiduciary duties owed to the limited partners. The prices PDC unilaterally determined to pay for each limited partnership unit was set as follows: (1) PDC 2004-D Limited Partnership: $7,544; (2) PDC 2005-A Limited Partnership: $7,000; (3) PDC 2005-B Limited Partnership: $5,506; and (4) Rockies Region Private Limited Partnership: $6,603.

41. On December 8, 2010, the limited partners of the 2004 Partnership (PDC 2004-D Limited Partnership) voted and a majority approved the proposed amendment and the merger.

42. On March 25, 2011, the limited partners of the 2005 Partnerships (PDC 2005-A Limited Partnership; PDC 2005-B Limited Partnership; and Rockies Region Private Limited Partnership) voted and, again, a majority approved the proposed amendment and merger.

43. The total amount paid by PDC for the Trust's partnership units was approximately $875,000. This sum amounts to less than 35 cents on the dollar of the amount invested by the limited partners in the Partnerships, and is far less than the true value of the Partnerships' assets.

44. As alleged herein, new drilling techniques, including horizontal drilling and hydraulic fracturing (known as "fracking"), made it possible for the Partnerships' operations to extract oil and gas that could not have previously been extracted economically utilizing traditional vertical wells. Horizontal drilling is a technique whereby instead of simply drilling straight down into a reserve, the drill equipment and process can be modified to drill into the same reserve on a horizontal plane, thus increasing and opening up greater access to the oil and gas. Hydraulic fracturing is another more recently employed drilling technology in

COMPLAINT FOR BREACH OF FIDUCIARY DUTY

which water is mixed with sand and chemicals to generate extremely high pressures within certain rock formations resulting in fractures that create access to oil and gas that was previously economically not recoverable by conventional drilling.

45.    As a consequence of the mergers, the limited partners were excluded from obtaining the benefits obtainable by exploiting the newer and more profitable drilling methods, and instead, only the general partner, PDC, realized these benefits in violation of PDC's fiduciary duties owed to the limited partners.

46.    Prior to the vote on the amendments and mergers, PDC failed to disclose the value to the Partnerships' assets attributable to the new drilling technologies described above despite its fiduciary obligation to do so. In fact, PDC's offer to purchase the Partnership units did not value the opportunity to develop the Partnerships' reserves in any meaningful way. Instead, PDC assigned no value to the horizontal wells and an arbitrary value of $10,000 per drilling location for the infill wells, and failed to disclose its own high valuation of these assets.

47.    As alleged above, a change in Colorado regulations, which allowed twice as many wells to be drilled on the same amount of land within the Wattenberg Field, greatly enhanced the value of the Partnerships' reserves. This was significant and material because the number of wells that can be drilled has a direct positive correlation with the value of reserves. Previously, regulations mandated that there could not be more than one drilling site for every 40 acres in the Wattenberg Field. The new regulations allowed no less than a 100% increase in that number.

48.    PDC had in its possession material information that showed that the Partnerships' interests in the Wattenberg Field, including the ability to develop horizontal wells in the Niobrara formation and to develop infill wells, were extremely valuable and worth substantially more than $10,000 per drilling location, given the changes in local regulation and the new drilling techniques alleged above.

COMPLAINT FOR BREACH OF FIDUCIARY DUTY

49.     On February 5, 2013, after purchasing the assets of the four Partnerships, PDC sold the Partnerships' former assets in the Piceance Basin in Colorado, and used the funds it obtained from those sales to develop the Partnerships former assets in the Wattenberg Field.

## FIRST CLAIM FOR RELIEF

### (Against Defendant for Breach of Fiduciary Duty)

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     Defendant PDC, as the sole general partner of each of the Partnerships, owed fiduciary duties to all of the limited partners in each such Partnership. In addition, PDC was in possession of material non-public information concerning the true value of the Partnerships' assets, business and future prospects. Thus, there existed an imbalance and disparity of knowledge and economic power between PDC and the limited partners.

52.     Defendant PDC breached its fiduciary duties owed to the limited partners of the Partnerships by, among other things, failing to disclose to the limited partners the true value of the Partnerships' assets and providing false or misleading information in the proxy statements regarding the value of those assets. Among other things, Defendant:

(a.)     Failed to disclose that PDC planned to refracture each partnership's existing vertical wells, which was projected by Ryder Scott to generate sufficient additional cash flows for each Partnership that would have permitted each Partnership to both develop horizontal wells in the Niobrara formation and infill wells on the Partnership's leaseholds and continue to make distributions to the limited partners;

(b.)     Failed to properly value the limited partnership units in light of new drilling techniques, including horizontal drilling and fracking;

19

COMPLAINT FOR BREACH OF FIDUCIARY DUTY

(c.)    Failed to disclose to the limited partners the increase in value of their units due to the new techniques (drilling and fracking);

(d.)    Failed to properly value limited partnerships units in light of the change in regulations that doubled the number of wells permitted;

(e.)    Failed to disclose to the limited partners the increase in value of their units due to the change in local regulations that more than doubled the number of wells permitted;

(f.)    Commissioned an appraisal report that failed to take into account the value of the new drilling techniques and change in regulation; and

(g.)    Assigned an arbitrary value of $10,000 per well when it had in possession data that showed the Partnerships' assets had much greater value.

53.    By reason of the foregoing common wrongful course of conduct, Defendant PDC breached its fiduciary obligations owed to Plaintiff for its own gain at the expense of the limited partners.

54.    As a direct and proximate cause of Defendant PDC's wrongful course of conduct, Plaintiff suffered damages, the exact extent of which will be proven at trial, and Defendant was unjustly enriched.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment, as follows:

A.    Award damages in favor of Plaintiff against Defendant, for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon.

B.    Award restitution and equitable relief to Plaintiff.

C.    Award of punitive damages.

D.    Award of Plaintiff's reasonable attorneys' fees, costs, and expenses incurred in this action, including expert fees.

COMPLAINT FOR BREACH OF FIDUCIARY DUTY

E.  Award such other and further relief as the Court may deem just and proper.

Dated:  February 2, 2016          FOLEY BEZEK BEHLE & CURTIS, LLP


                                  By: */s/ Thomas G. Foley, Jr.*
                                  THOMAS G FOLEY, JR.
                                  Attorneys for Plaintiff Christopher J.
                                  Rodenfels, as Trutee

21

COMPLAINT FOR BREACH OF FIDUCIARY DUTY