IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Judge R. Brooke Jackson

Civil Action No 17-cv-03079-RBJ

ROBERT R. DUFRESNE, a Trustee of the Dufresne Family Trust;
MICHAEL A. GAFFEY, as Trustee of the Michael A. Gaffey and JoAnne M. Gaffey Living
Trust dated March 2000;
RONALD GLICKMAN, a Trustee of the Glickman Family Trust est. August 29, 1994;
JEFFREY SCHULEIN, a Trustee of the Schulein Family Trust est. March 29, 1989; and
WILLIAM MCDONALD, as Trustee of the William J. and Judith A. McDonald Living Trust
est. April 16, 1991,

      Plaintiffs,

v.

PDC ENERGY, INC., a Delaware corporation, in its capacity as the General Partner of the
Rockies Region 2006 Limited Partnership and the Rockies Region 2007 Limited Partnership;
BART R. BROOKMAN, JR., an individual as the Chief Executive Officer of the defendant PDC
Energy, Inc.;
LANCE A. LAUCK, an individual as the Executive Vice President of defendant PDC Energy,
Inc.;
JEFFREY C. SWOVELAND, an Individual;
ANTHONY J. CRISAFIO, an Individual; and
DAVID C. PARKE, an Individual,

      Defendants,

and

ROCKIES REGION 2006 LP, a West Virginia limited partnership; and
ROCKIES REGION 2007 LP, a West Virginia limited partnership,

      Nominal Defendants.

---

## ORDER ON MOTION TO DISMISS

---

This matter is before the Court on defendants PDC Energy, Inc. ("PDC"), Bart

Brookman, Jr., Lance Lauck, Jeffrey Swoveland, Anthony Crisafio, and David Parke's

1

("individual defendants") motion to dismiss [ECF No. 39] plaintiffs' second amended complaint ("SAC") [ECF No. 37]. For reasons stated below, the motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

PDC is a publicly traded oil and gas company headquartered in Denver, Colorado. SAC, ECF No. 37 at ¶¶3, 23. It owns, operates, and manages oil and gas properties primarily in Colorado, Texas, and West Virginia. *Id.* at ¶3. In the mid-1980s until 2007, PDC formed dozens of limited partnerships to raise capital to finance the acquisition and development of additional oil and gas properties. *Id.* PDC served as the managing general partner for the limited partnerships, and it used the millions invested to drill new wells. *Id.* at ¶15.

Of the 76 limited partnerships that PDC formed, there are just two at issue in this case: the Rockies Region 2006 Limited Partnership and Rockies Region 2007 Limited Partnership (collectively, the "Partnerships"). *Id.* at ¶4. The Partnerships owned the rights to multiple oil and gas properties, including rights in the Wattenberg Field in Colorado. *Id.* According to plaintiffs, the Wattenberg Field is one of PDC's most profitable properties. *Id.* As such, this field became a central figure in the alleged wrongful scheme to deprive the Partnerships of their interests.

The alleged scheme began at some point prior to 2010. Plaintiffs allege that PDC decided to divest itself of its obligations to the numerous partnerships, including the Partnerships involved in this case, because PDC wanted to solely benefit from the production of oil and gas that the Wattenberg Field produced. *Id.* at ¶5. So, PDC devised a scheme to purchase the Partnerships and their associated assets below market value. *Id.* Mr. Lauck was the supposed "mastermind" of the plan. *Id.* Plaintiffs believe that PDC concealed the wrongful scheme under

the guise of a "shift in corporate strategy" away from the partnership model to a more traditional oil and gas model. *Id.* at ¶6.

According to the SAC, PDC's alleged scheme went into action when it started merging earlier partnerships formed between 2002 and 2005. *Id.* at ¶7. This sparked a separate class action lawsuit against PDC in the Central District of California, where plaintiff Schulein served as the lead plaintiff. *Id.* (citing *Schulein v. Petroleum Dev. Corp.*, No. SACV 11-1891 AG ANX, 2014 WL 114520, at *1 (C.D. Cal. Jan. 6, 2014)). In that case, the district court ultimately approved a $37 million settlement. *Id.* As a result, plaintiffs assert that PDC halted the alleged scheme to purchase the 2006 and 2007 Partnerships. *Id.* at ¶8.

Nonetheless, plaintiffs allege at least four specific wrongful acts committed by PDC as part of the broader scheme. First, plaintiffs allege that defendants failed to assign the Partnerships 32-acre spacing units as required by the agreement. SAC, ECF No. 37 at ¶53. The terms of the Partnership Agreement required PDC to assign to the Partnerships "prospects," which the agreement defines as a "drilling or spacing unit on which [a] well will be drilled by the Partnership which is the minimum area permitted by state law or local practice on which one well may be drilled." *Id.* at ¶16; Ex. 2, ECF No. 37-2 at 18. Because at the time the minimum drilling or spacing unit for a vertical well in the Wattenberg Field was 32 acres, plaintiffs assert that PDC was obligated to transfer 32-acre spacing units to the Partnership. SAC, ECF No. 37 at ¶16. So, when PDC assigned the Partnerships lesser "wellbore" interests—which is simply the shaft of a vertical well drilled by the Partnerships—instead of the full 32-acre spacing units, plaintiffs assert that PDC breached its contractual obligations. *Id.* at ¶16. Plaintiffs primarily object to this decision because it allowed PDC to drill horizontal wells through the spacing units in the Wattenberg Field assigned to the Partnerships, which effectively drained the oil and gas

from the Partnerships' existing vertical wells and thus drained plaintiffs' expected revenue. *Id.* at ¶53.

Second, plaintiffs allege that defendants failed to take proper steps to maximize the profits of the Partnerships' property. To start, plaintiffs allege that PDC represented to investors that it would "recomplete or refracture" the Partnerships' existing wells within five or six years after the initial drilling. *Id.* at ¶12. Despite this alleged representation, PDC ultimately decided to "plug and abandon" most of the Partnerships' vertical wells. *Id.* at ¶¶12, 17. Plaintiffs further allege that defendants refused to drill additional infill wells on the Partnerships' spacing units when in 2009 Colorado reduced the minimum spacing unit for a vertical well from 32 to 20 acres. *Id.* at ¶16. Finally, plaintiffs allege that PDC failed to maximize the Partnerships' profits by failing to utilize other standard procedures to develop Partnership prospects, such as farmouts or pooling. *Id.* at ¶14.

Third, plaintiffs allege PDC breached its fiduciary duties when it profited from the drilling of horizontal wells that passed through the Partnerships' spacing units in the Wattenberg Field without compensating the Partnerships. *Id.* at ¶15. And lastly, plaintiffs allege yet another breach of fiduciary duty by PDC when it entered into an agreement with Noble Energy, Inc. ("Noble") by which it traded to Noble a portion of the Partnerships' spacing acreage for other acreage in the Wattenberg Field that is adjoining PDC's own acreage. *Id.* This allowed PDC to drill longer and more profitable horizontal wells for its own benefit and at the expense of the Partnerships' interest. *Id.*

Defendants tell a different story. They contend that after paying significant distributions to plaintiffs for many years, the productivity of the Partnerships' wells naturally declined with age. ECF No. 39 at 3. In fact, defendants allege that the costs to maintain plaintiffs' wells

started to exceed revenues by hundreds of thousands of dollars per year.  *Id.*  This loss required

PDC to plug or abandon the Partnerships' wells beginning in October 2017.  *Id.*  Further,

defendants allege that plaintiffs' only beef with them is that they want a share of the profits PDC

has earned from the horizontal wells that it operated in the same area as the Partnerships' wells.

*Id.* at 2.  However, defendants refuse to share in their profits from the horizontal wells because

the original investment offerings concerned only the original wells; any additional wells that

PDC drilled were explicitly not part of the agreement.  Thus, defendants believe that the

Partnerships have no rights to any subsequently drilled wells.  *Id.*

<u>Procedural History</u>

Derivative plaintiffs Dufresne, Gaffey, and Schulein ("derivative plaintiffs"), on behalf of

the Partnerships, brought their initial complaint on December 20, 2017.  ECF No. 1.  Derivative

plaintiffs amended their complaint on April 26, 2018 to add class claims.  ECF No. 26.  Plaintiffs

Glickman and McDonald are the "class plaintiffs."  SAC, ECF No. 37 at 2 n.1.  Plaintiffs

subsequently filed a second amended complaint on July 10, 2018.  ECF No. 37.  Defendants filed

their motion to dismiss on July 31, 2018.  ECF No. 39.  Plaintiffs responded on August 21, 2018,

ECF No. 41, and defendants filed a reply brief shortly thereafter, ECF No. 42.  The motion is

now ripe for review.

**II. STANDARD OF REVIEW**

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the complaint must contain

"enough facts to state a claim to relief that is plausible on its face."  *Ridge at Red Hawk, L.L.C. v.

Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  A plausible claim is a claim that "allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  While the Court must accept the well-pleaded allegations of the complaint as

true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d

1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true.  *Iqbal*,

556 U.S. at 681.  However, so long as the plaintiff offers sufficient factual allegations such that

the right to relief is raised above the speculative level, he has met the threshold pleading

standard.  *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th

Cir. 2008).

## III. ANALYSIS

Defendants' motion to dismiss rests on three primary arguments.  *See* ECF No. 39 at 4–

15.  First, defendants assert that plaintiffs' SAC does not contain sufficient facts to support

plaintiffs' claim that the individual defendants aided and abetted PDC's breach of fiduciary duty.

*Id.* at 4–11.  Next, defendants contend that plaintiffs' claims based on PDC's alleged failure to

assign the Partnerships 32-acre spacing units are time-barred.  *Id.* at 11–14.  Lastly, defendants

assert that the class claims relating to the 2006 Partnership wellbore assignments are time-barred.

*Id.* at 14–15.

**A.** **Aiding and Abetting the Alleged Breach of Fiduciary Duty Claim Against**

**Individual Defendants Brookman, Lauck, Swoveland, Crisafio, and Parke**.

In claims two (brought by derivative plaintiffs) and six (brought by class plaintiffs),

plaintiffs allege a claim for aiding and abetting a breach of fiduciary duty against individual

defendants Brookman, Lauck, Swoveland, Crisafio, and Parke.  SAC, ECF No. 37 at 39.  Under

Delaware law,[1] a claim for aiding and abetting a breach of fiduciary duty is a "stringent

---

[1] The parties agree that the Partnership Agreements are governed by West Virginia law.  ECF No. 39 at 5
n.2; ECF No. 41 at 2 n.1.  The parties also agree that, in the absence of controlling precedent, West
Virginia courts apply Delaware law on issues related to corporate governance.  Thus, I will apply
Delaware law for the first issue because it relates to corporate governance.

[standard], one that turns on proof of scienter of the alleged abettor." *Binks v. DSL.net, Inc.*, No. CIV.A. 2323-VCN, 2010 WL 1713629, at *10 (Del. Ch. Apr. 29, 2010). The claim has four elements: "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, . . . (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach." *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001) (internal citation and quotation marks omitted). The only element at issue in this motion is the third element. "[T]he element of 'knowing participation' requires that the secondary actor have provided 'substantial assistance' to the primary violator." *In re Dole Food Co., Inc. Stockholder Litig.*, No. CV 8703-VCL, 2015 WL 5052214, at *41 (Del. Ch. Aug. 27, 2015) (internal citation and quotation marks omitted). Whether a defendant "knowingly" provided "substantial assistance" is a fact intensive analysis. *Id.* at *42.

To survive a Rule 12(b)(6) motion on this claim, the SAC must allege sufficient facts from which "knowing participation can be inferred." *McGowan v. Ferro*, No. CIV.A. 18672-NC, 2002 WL 77712, at *2 (Del. Ch. Jan. 11, 2002) (internal citation and quotation marks omitted). Importantly, plaintiffs are not required to plead knowing participation with particularity, but "[c]onclusory statements that are devoid of factual details to support an allegation of knowing participation will fall short of the pleading requirement needed to survive a Rule 12(b)(6) motion to dismiss." *Id.* (internal citation and quotation marks omitted).

Defendants attack plaintiffs' aiding and abetting claims by arguing that the SAC asserts conclusory facts and fails to plead any facts showing that the individual defendants substantially assisted in the alleged acts. ECF No. 39 at 6. Defendants first focus on the most remote allegation: that PDC assigned the Partnerships lesser wellbore interests instead of 32-acre spacing units. *Id.* at 7. Defendants correctly highlight that the SAC itself states that these

assignments occurred in 2007 and 2008, respectively. *See* SAC, ECF No. 37 at ¶53 n.6. Because Mr. Brookman did not become a senior officer until 2013, and because Mr. Lauck did not join PDC until 2009, defendants argue that they could not have assisted in these assignments. ECF No. 39 at 7. As for Messrs. Swoveland, Crisafio, and Parke, all of whom are nonexecutive (outside) directors, defendants argue that plaintiffs only assert that they "knew" of the wellbore assignments. *See* SAC, ECF No. 37 at ¶129. Defendants contend that such knowledge cannot constitute substantial assistance under the law. ECF No. 39 at 7. Defendants go on to argue that, as outside directors, they were in no way involved in day-to-day operations and thus could not have offered substantial assistance to this alleged scheme. *Id.* Defendants then argue that any reference to previous mergers concerning different partnerships are wholly irrelevant to plaintiffs' assertion that these individual defendants facilitated and encouraged the alleged wrongful scheme at issue in this case. *Id.* at 9.

In response, plaintiffs argue that defendants' motion overstates the pleading requirement for knowing participation of aiding and abetting a breach of fiduciary duty. ECF No. 41 at 1. Plaintiffs believe that it has pled sufficient facts from which a claim for aiding and abetting can be inferred, such as PDC's decision to pay Mr. Lauck a bonus for his work in acquiring other drilling partnerships and the nonexecutive directors' role in approving other merger transactions. *Id.* at 3–8. Plaintiffs contend that mergers and transactions concerning similar partnerships is evidence of the ongoing plan and scheme to harm the Partnerships. *Id.* Defendants counter that plaintiffs still do not (and cannot) point to any specific facts that the individual defendants participated in or knew about PDC's purported decisions to plug the Partnerships' wells or otherwise squander their assets and revenues. ECF No. 42 at 1–2. The Court agrees.

The SAC is simply conclusory concerning the individual defendants. Alleging that the "Individual Defendants were either officers or directors of PDC during the time in which PDC crafted its strategy and began taking steps to bring it to fruition" is not helpful to show how each defendant substantially assisted in the breach. ECF No. 41 at 6 (citing SAC, ECF No. 37 at ¶¶24–28). While I agree with plaintiffs that they are not required to plead this claim with particularity, the facts they allege are insufficient to withstand a Rule 12(b)(6) motion.

Starting with Mr. Brookman, PDC's current president, chief executive officer ("CEO"), and board member, defendants allege that he could not have provided substantial assistance to the alleged scheme—which purportedly began prior to 2010—because he has only held the role of president and CEO since January 2015. Plaintiffs don't dispute this fact, but they argue that he was involved in the scheme in his previous roles as senior vice president, chief operating officer, and executive vice president starting in July 2005. Regardless of his title, the SAC fails to plead facts which would allow me to draw an inference that he provided substantial assistance to the alleged scheme. In paragraph 97 of the SAC, plaintiffs allege that he "had actual knowledge of PDC's fiduciary obligations to Plaintiffs at the time of the merger transactions and participated in adopting and carrying out PDC's 'Corporate Strategy' to take control of the assets held by all of PDC's drilling partnerships." Paragraph 97 goes on to alleged that he "knowingly participated in PDC's ongoing breaches of fiduciary duty that have and continue to cause injury to the Partnerships and the Investor Partners." This is not enough to show that Mr. Brookman knowingly participated in the alleged wrongful conduct. Plaintiffs fail to cite any facts that allege substantial assistance on behalf of Mr. Brookman. Paragraph 97 does provide one example: that the acreage trade between PDC and Noble occurred while Mr. Brookman was CEO, and that he personally certified the land swap as required by the SEC filings. Although

this shows that Mr. Brookman was eventually informed of the Noble transactions, it again fails to plead facts which show that Mr. Brookman substantially assisted PDC in carrying out the wrongful act or scheme. As such, this claim fails.

Allegations against Mr. Lauck fare no better. The SAC alleges that Mr. Lauck, the current executive vice president for corporate development and strategy, "masterminded" the idea of the entire scheme. *See* SAC, ECF No. 37 at ¶5. But defendants' motion explicitly states that Lauck did not join PDC until 2009, and plaintiffs completely ignore this fact in their response. If the first step in the alleged scheme (PDC's decision to assign the Partnerships wellbore assignments) occurred in 2007 and 2008, as plaintiffs allege, *see* SAC, ECF No. 37 at ¶53 n.6, I fail to see how Mr. Lauck could have masterminded this plan. Plaintiffs also argue that Mr. Lauck received a bonus in 2011 for his contributions to his work associated with PDC's mergers of other partnerships, and assert that this bonus was made to induce his involvement in the alleged scheme. ECF No. 41 at 8. However, the case that plaintiffs cite for support does not help their case. In *McGowan v. Ferro*, the court granted the motion to dismiss because the complaint did not allege that the side payments were so "grossly excessive as to be inherently wrong." No. CIV.A. 18672-NC, 2002 WL 77712, at *3 (Del. Ch. Jan. 11, 2002) (internal citations and quotation marks omitted). One case that the *McGowan* court surveyed involved a side payment to the corporation's directors and officers which ranged between $15 to $17 million. *Id.* Here, plaintiffs do not specify the value of Mr. Lauck's bonus, but I will not infer that it is grossly excessive without any factual support.[2] As such, the SAC's factual allegations against Mr. Lauck are not legally sufficient to allege inducement to breach a fiduciary duty.

---

[2] According to PDC's 2016 Schedule 14A SEC filing, Mr. Lauck received an annual bonus of $512,000 in 2016. ECF No. 37-27 at 45. This is the only bonus information I could find that was attached to the SAC.

Finally, turning to the three outside directors, Messrs. Swoveland, Crisafio, and Parke, plaintiffs argue that these three individual defendants were part of a special committee of the board of directors that approved merger agreements for other partnerships. ECF No. 41 at 7 (citing SAC, ECF No. 37 at ¶¶94–95). Defendants argue that these extraneous merger transactions are irrelevant to this lawsuit, and in any case, actions by a special committee in no way show that these individual defendants were involved in day-to-day operations of PDC. ECF No. 39 at 9.

Although I don't necessarily agree that all actions taken against other partnerships are irrelevant to a claim of an alleged wrongful corporate scheme, I agree that this singular action by a special committee concerning other partnerships fails to show that defendants substantially assisted in the alleged breach. It is simply another conclusory allegation that prevents me from even inferring that these individual defendants knowingly participated in the underlying scheme. "Under Delaware Law, there is no authority to support the attribution of knowledge to Outside Directors who are not alleged to be directly involved in the day-to-day operations of the company." *Taylor v. Kissner*, 893 F. Supp. 2d 659, 671 (D. Del. 2012) (internal citations and quotation marks omitted). Even the single case that plaintiffs cite fails to support their position. Plaintiffs' brief cites *In re TIBCO Software Inc. Stockholders Litig.* for the proposition that the "requirement of participation can be established if the alleged aider and abettor participated in the board's decisions, conspired with [the] board, or otherwise caused the board to make the decisions at issue." No. CV 10319-CB, 2015 WL 6155894, at *24 (Del. Ch. Oct. 20, 2015) (internal citation and quotation marks omitted). But again, plaintiffs have not plead any facts showing that these individual directors conspired with the board or caused the board to make unlawful decisions. Rather, the special committee simply voted to approve the previous merger

agreements.  Because plaintiffs have failed to plead any facts showing day-to-day involvement by the outside directors which might shed light that they directed or facilitated the alleged scheme, the claims against them are dismissed.

In sum, I find that plaintiffs have failed to sufficiently allege aiding and abetting by the individual defendants in claim two and claim six.  Because plaintiffs have already submitted two amended complaints, these claims are dismissed with prejudice.

### B.  <u>The Timeliness of Plaintiffs' Claims.</u>

As highlighted above, one of plaintiffs' core allegations against PDC involve PDC's alleged failure to assign 32-acre spacing units to the Partnerships.  *See* ECF No. 37 at ¶¶16, 53, 104.  Instead, defendants assigned the Partnerships lesser wellbore interests.  According to the SAC, these wellbore assignments were filed with the SEC in December 2007 for the 2006 Partnership and August 2008 for the 2007 Partnership.  *Id.* at ¶53 n.6.  The timing is important because under West Virginia law, the statute of limitations for a breach of contract claim is ten years.  W. Va. Code § 55-2-6.  Even more limiting is the statute of limitations for a breach of fiduciary duty claim, which carries a two-year limitation.[3]  *Dunn v. Rockwell*, 689 S.E.2d 255, 268 (W. Va. 2009) (citing W. Va. Code. § 55-2-12).  Like most states, the limitation period in West Virginia "begins to run either when the errors take place or when the errors are first known or should have been known." *Harris v. Cty. Comm'n of Calhoun Cty.*, 797 S.E.2d 62, 63 (W. Va. 2017).

---

[3] Plaintiff does not dispute that the two-year statute of limitations period applicable to a breach of fiduciary duty also applies to aiding and abetting a breach of fiduciary duty.  Therefore, I will apply the "catchall" limitations period found in W. Va. Code. § 55-2-12 to the aiding and abetting claim.  This appears to be in line with West Virginia caselaw, where a federal district court judge applied the two-year statute of limitations in § 55-2-12 to plaintiffs' claims for breach of fiduciary duty and aiding and abetting a tort.  *W.W. McDonald Land Co. v. EQT Prod. Co.*, 983 F. Supp. 2d 790, 811 (S.D. W. Va. 2013).

Defendants argue that any contract claim relating to PDC's alleged failure to assign 32-acre spacing units to the Partnerships are time-barred per the constructive notice doctrine. ECF No. 39 at 11. In this case, plaintiffs filed the original complaint on December 20, 2017. ECF No. 1. Because PDC publicly recorded the 2006 Partnerships' wellbore assignments in Colorado in July 2007, defendants argue that plaintiffs filed their complaint five months too late.[4] ECF No. 39 at 13. Thus, they argue that any contract claims relating to the 2006 wellbore assignments (but not the 2007 wellbore assignments, which were filed with the SEC in August 2008) are time-barred. *Id.* Defendants further allege that any claims for breach of fiduciary duty relating to either the 2006 or 2007 assignments are barred by the two-year limitation period. *Id.*

Plaintiffs respond by arguing that the constructive notice doctrine in this context does not apply to investors, only subsequent purchasers of the property. ECF No. 41 at 10. Moreover, plaintiffs allege that the duty to investigate does not apply to situations where the recorder has a fiduciary relationship. *Id.* at 11. Finally, plaintiffs assert that defendants mislead them when they submitted their SEC 10-G filing in December 2007 in which PDC allegedly failed to disclose the wellbore assignments. *Id.* Defendants counter by arguing that the cited authority applied the constructive notice doctrine to not just subsequent purchasers of property but also to nonpurchasers such as plaintiffs bringing breaches of contract and fiduciary claims. ECF No. 42 at 3.

---

[4] At defendants' request, the Court takes judicial notice of the public recording of the "Assignment of Working Interest, Wellbore Only" for the 2006 Partnership dated July 20, 2007 for Weld County and July 23, 2007 for Garfield County. *See* ECF Nos. 40, 40-1. Federal Rule of Evidence 201(b)(2) allows me to take judicial notice of facts which are "not subject to reasonable dispute because . . . [they] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Here, these recordings are publicly available through the Weld and Garfield County clerks' office and thus meet the definition found in Rule 201(b)(2). Next, this Court may consider matters of public record whose authenticity cannot be questioned "when resolving a motion to dismiss without converting the motion to one for summary judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1197 (10th Cir. 2014). Consequently, I find judicial notice of the public recordings to be appropriate in this case.

The West Virginia Supreme Court of Appeals (the court of last resort) employs a five-step analysis to determine whether a claim is barred by an applicable statute of limitations. *Perrine v. E.I. du Pont de Nemours & Co.*, 694 S.E.2d 815, 851–52 (W. Va. 2010).

> First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

*Id.* (internal citation and quotation marks omitted). Here, upon reaching the fourth step of this five-step framework, I find that I cannot dismiss this claim on statute of limitations grounds.

I have already addressed the first step. Under West Virginia law, the limitations period is ten years for a breach of contract claim and two years for a breach of fiduciary duty claim. Second, at least for the 2006 Partnership wellbore assignments, I find that there is no material fact dispute concerning the date defendants assigned this lesser interest. It occurred in July 2007 as evident by the public recording. The analysis becomes trickier at step three. The only authority that plaintiffs cite, which comes from Colorado and is thus persuasive authority in this case, stands for the proposition that the state's recording act operates to alert all future purchasers or grantees of the land. *See* ECF No. 41 at 10 (citing *Franklin Bank, N.A. v. Bowling*, 74 P.3d 308, 313 (Colo. 2003)). It does not affirmatively state that it applies solely to subsequent

purchasers of the land, as plaintiffs suggest. To the contrary, the Colorado Supreme Court stated, "When a party properly records his interest in property with the appropriate clerk and recorder, he constructively notifies 'all the world' as to his claim," not just subsequent purchasers. *Franklin Bank*, 74 P.3d at 313. This is consistent with West Virginia precedent. *See Curlett v. Newman*, 3 S.E. 578, 580 (W. Va. 1887).

Having decided that plaintiffs cannot prevail at step three, I turn to the fourth step. Here, plaintiffs allege that they are entitled to tolling of the statute of limitations because of affirmative representations PDC made. ECF No. 41 at 11. Because I am required to construe all facts in light most favorable to plaintiffs, I agree.

West Virginia precedent is clear that step four is generally a question of fact for the jury, and plaintiffs have sufficiently alleged a material fact dispute. Specifically, in responding to defendants' statute of limitations defense, plaintiffs believe that defendants' SEC 10-G filing on December 24, 2007 mislead them into thinking that defendants would assign the Partnerships spacing units instead of wellbore interests, as promised in the Partnership Agreements. *Id.* at 12. The SEC 10-G filing states that "[t]he Partnership's properties consist of working interests in natural gas wells and the ownership in leasehold acreage in the spacing units for the ninety-seven wells drilled by the Partnership" and that "[a] thorough examination of title has been made with respect to all of the Partnership's spacing units on which wells are drilled and the Partnership believes that it has generally satisfactory title to such properties." *Id.* (citing Ex. A, ECF No. 41-1 at 32). Thus, plaintiffs assert that defendants affirmatively represented that the Partnerships possessed acreage in spacing units both before and after the recording. *Id.* at 12–13. Defendants counter by arguing that they attached the "wellbore-only" assignments to the SEC filings, and therefore, plaintiffs cannot claim that they were not on notice. ECF No. 42 at 4.

I cannot definitively say whether plaintiffs knew or should have known of the 2006 wellbore assignments in 2007, especially because plaintiffs affirmatively assert in the SAC that they were not aware of these assignments until they received a letter from PDC in October 2017. *See* SAC, ECF No. 37 at ¶53 n.6. Thus, at this stage, plaintiffs have met the pleading standard. However, this holding applies only to claims for breach of contract, which carry a ten-year statute of limitation. As I highlighted above, a claim for breach of fiduciary duty carries a much shorter two-year limitations period. Defendants point out that at least two of the five plaintiffs had actual knowledge of the wellbore assignments over two years ago—they were named plaintiffs in the *Schulein* action, in which those plaintiffs litigated this same issue. ECF No. 39 at 14 n.7.

Plaintiffs' sole response to defendants' attack on the breach of fiduciary duty claims is that the "continuing tort theory" bars defendants' motion to dismiss because it seeks to dismiss only a portion of plaintiffs' breach of fiduciary duty claims. ECF No. 41 at 13 n.6. I disagree. Under plaintiffs' cited authority, the Supreme Court of Appeals of West Virginia requires one "continuing cause of action," such as situations where each alleged event is "identical, occur repeatedly, at short intervals, in a consistent, connected, [and] rhythmic manner." *Copier Word Processing Supply, Inc. v. WesBanco Bank, Inc.*, 640 S.E.2d 102, 108 (W. Va. 2006). Here, the improper actions that form the breach of fiduciary duty claims include the alleged (1) improper wellbore assignments, (2) wrongful plugging of Partnerships' wells, (3) improper transfer of Partnerships' assets to third parties, and (4) ongoing waste of Partnerships' assets. *See* SAC, ECF No. 37 at ¶¶16, 60–61, 63–65. It is plain to me that these actions are not identical, did not occur repeatedly, and were not consistent. Thus, they do not amount to a continuing tort. As

such, plaintiffs cannot use the alleged improper wellbore assignments to support their breach of fiduciary duty claims.

Accordingly, defendants' motion to dismiss plaintiffs' claims concerning the alleged improper wellbore assignments is denied as to plaintiffs' breach of contract claims. But plaintiffs are time-barred from using the wellbore assignments to support their breach of fiduciary duty claims.

### C.  The Timeliness of Plaintiffs' Class Claims Relating to the 2006 Partnership.

Plaintiffs first brought class claims in their first amended complaint ("FAC"), which they filed on April 26, 2018. ECF No. 26. Defendants allege that any class claims relating to the 2006 Partnership wellbore assignments are time-barred because defendants filed notice of those assignments with the SEC on December 24, 2007. ECF No. 39 at 14. Plaintiffs admit this fact in the SAC. SAC, ECF No. 37 at ¶53 n.6. Defendants contend that the SEC filing put class plaintiffs on constructive notice. *Id.* Defendants, anticipating plaintiffs' response, argue that these class claims do not relate back to the original complaint because defendants believe that they were entitled to notice of the number and generic identities of the potential plaintiffs within the ten-year limitations period. *Id.* at 14–15. Predictably, plaintiffs respond by arguing that their class claims relate back to the original complaint. ECF No. 41 at 13–15.

Because of my holding above, I find that the relation back doctrine is not an issue in this case. I have already ruled that plaintiffs have adequately pled a factual dispute concerning the issue of constructive notice. If the jury decides that plaintiffs should have known about the alleged improper wellbore assignments in 2007, the class claims relating to the 2006 Partnership will be time-barred because the original complaint will be untimely. The relation back doctrine would not save the class claim. However, if the jury reaches the opposite conclusion, relation

back would still not be an issue because the amended complaint itself would be timely per the ten-year statute of limitations. And the same is true if plaintiffs seek to use the wellbore assignments relating to either the 2006 or 2007 Partnerships to support their breach of fiduciary duty claims—relation back wouldn't help those claim because the original class claim would be untimely anyway.

Accordingly, defendants' motion to dismiss plaintiffs' class claims concerning the alleged improper wellbore assignments is denied as to class plaintiffs' breach of contract claims. But class plaintiffs are time-barred from using the wellbore assignments to support their breach of fiduciary duty claims.

## ORDER

For the reasons above, defendants' motion to dismiss, ECF No. 39, is GRANTED in part and DENIED in part.

DATED this 19th day of February, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge